BONCROFT v. SEASHORE CAMP GROUND SCHOOL.
[82 South. 314, Division A. No. 20687.]

LANDLORD AND TENANT. *Tenant from year to year. Increase in rent.*
Where a tenant from year to year, after having been notified that her rent would be increased, did not assent to the payment of such increase, but merely remained on the land. In such case she did not become liable for the increased rent, having the right to hold the land until her tenancy was terminated in the statutory manner, and being liable during that time only for the rent she agreed to pay.

APPEAL from the chancery court of Harrison county.
HON. W. M. DENNY, JR., Chancellor.

Bill by the Seashore Camp Ground School against Mrs. Catherine Boncroft. From a decree for complainant, defendant appeals.

The appellee is the owner of a large tract of land upon the seashore, in Harrison county, Mississippi, having acquired this land from its predecessor, the Seashore Camp Ground. Upon this land is located a school, which is owned and conducted by appellee, and at certain times religious services are held upon the ground. To afford the opportunity of attending these services, as well as to enjoy the summer season on the seacost, it early became the custom for the proprietor of this tract of land (which is an affiliated organization

of the Methodist Episcopal Church South) to permit members of the Methodist Church to erect and oc-cupy cottages (or "tents," as they are called) upon this land. No title to the land was conveyed by the proprietor, but the various tenants were allowed the privilege of erecting and occupying these cottages by paving certain rentals or assessments, and contigent further upon the tenants complying with the rules and regulations promulgated by the trustees of the proprietary corporation.

As mentioned above, appellee is the successor of the Seashore Camp Ground, which was incorporated by legislative act in the year 1878. See Laws of 1878, pp. 652-655. In or about the year 1912, the old cor-poration was reorganized and a new charter insued to the Seashore Camp Ground School (appellee). Section 8 of this new charter prescribes that all rights and privileges then possessed or owned by the tenants (or "tent owners," as they are called) under the old char-ter, by-laws, and rules, are preserved subject to all existing regulations and limitations. Section 12 of the new charter then prescribes the rights and powers of the board of trustees, vesting them with sovereign authority in the management of appellee's property and affairs, so far as is consistent with the law of the land.

By virtue of this authority (which was also possessed by the trustees under the old charter), the trustees from time to time established such rules and regulations as they deemed proper, and especially did they change the assessments of yearly rentals to conform to the financial needs of the corporation. Appellant ob-jected to the action of the trustees in increasing one of these assessments and declined to pay it; where-upon, appellee instituted suit for the collection of the past due amounts, and, if same were not paid, then to be allowed to enforce its lien upon appellant's improve-

ments on said tract.  A part of the sum sued for was barred by the statute of limitations, but as to the balance the chancellor gave judgment, impressing the amount thereof as a lien upon said improvements if it was not promptly paid.  From this decree defendant appealed,

*E. J. Bowers,* for appellant.

We regard it as elementary that no contract once entered into can be changed by the act of one of the parties without the assent of the others.  This seems to us to be absolutely elementary and beyond dispute and the facts of this case show beyond any doubt or question, aye indeed beyond reasonable doubt, that appellant never assented to any change in this contract and her son who transacted all of the business for her with the Camp Grounds and the Camp Grounds School testified to that fact and testified that when his mother took the property over at the death of William Otis or rather at the death of her husband who inherited from William Otis that he absolutely had an understanding with the head of the camp ground to the effect that as long as she paid this money his mother was to be permitted to remain upon the land, this we respectfully submit settles the case; he also testifies that neither he nor his mother ever agreed to abide by any of the rules or submit to any changes with reference to the rent or any matter whatever, we respectfully sumbit that no sort of evidence appears in this record that would authorize this court in holding that any change was ever made in the original contracts; besides this verbal contract was not void unnot in writing but a verbal contract is as sacred in so far as changes in the contract are concerned as written der the statute of frauds because it provided that as

long as Mrs. Bancroft paid this money she could, as long as she lived, occupy the property and it the court please, such a contract as that has never been held to be within the statute of frauds because she might have lived six months or sixty years. We respectfully insist that there is absolutely no evidence in this record that indicates in the slightest degree that any change in the contract originally made beween the parties was ever made by any person whatever or any person who represented or had any authority to represent appellant in this cause. In addition to all this the evidence shows that the defendant, here the appellant, paid to the Sea Shore Camp Grounds year after year the sum of twelve dollars and fifty cents, the amount agreed upon originally as rent of the premises. Certainly, if the court please, this fact alone would settle the transaction because she paid the rent therefor; again, if the court please, the defendant pleaded the statute of limitations, certainly that statute cuts off all claims prior to three years last before the bringing of this suit. The amount of the decree is fifty-one dollars which is infinitely more than the difference between the twenty five dollars tax claimed and the twelve dollars and fifty cents paid by the appellant; certainly the decree should have been limited to the thirty-seven dollars and fifty cents.

Upon the whole record we therefore insist that the decree of the court below was erroneous and should be reversed and the bill dismissed.

*Chas. S. Brown, Hanun Gardner* and *White & Ford,* for appellee.

Appellant's position is untenable. Mr. Bancroft in his testimony admits that his mother had no written lease or paper title to the lot upon which her cottage or "tent" is situated and both Mr. Meyer and Mr.

Daniels testified that no written lease was ever executed by appellee with any of its tenants. This conclusively makes the tenancy one from year to year. To hold otherwise would be in express violation of section 4775, Sub-Division C. of the Code of 1906. And being a tenancy from year to year, no contract rights prevent a change in the amount of rental at the commencement of any yearly term.

But appellant's counsel says the contract between the parties is taken out of the statute of frauds by virtue of a conversation appellant's son had with a Mr. McKie, former president of the Seashore Camp Ground, about twenty-two years ago, when Mr. McKie (who is now dead) is alleged to have given appellant permission to enjoy the use of her tent "as long as she paid the rental then in force" twelve dollars and fifty cents.

And this position we say is untenable, first, because a verbal contract of this kind would be in effect a complete emasculation of the statute: second, because it would be in direct conflict with appellee's charter and by-laws; and third, because it would be beyond the power and authority of the president to make such a contract. Cook on Corporations, (5 Ed.) par. 716, p. 1766, says: "The president of a corporation has no power to buy, sell or contract for the corporation, nor to control its property, funds or management. This is a rule established by the great weight of authority."

The authorities cited under this section are voluminous, covering several pages. In addition we refer to the comparatively recent decisions in *Taylor* v. *Vossburg Mineral Springs Co.,* 54 So. 907, and *Clark* v. *Minge,* 65 So. 832.

Mr. McKie, as president, could not override the charter and by-laws of the corporation and ignore a long established custom, by attempting to create an indefinite lease at a fixed rental. Mrs. Bancroft's

lease is, and has at all times been, on the same basis as those of the other tenants a yearly lease or license, revocable at the will of the lessor. *Crosdale* v. *Lanigan*, 26 Am. St. 551.

In *Belzoni Oil Co.* v. *Railroad*, 94 Miss. 76, Chief Justice Whitfield, in referring to *Crosdale* v. *Lanigan*, calls it: "The best statement of the law on this subject which we find, and one which we quote with approval." Continuing, Judge Whitfield quotes from that case as follows: "There has been much contrariety of decision in the courts of different states and jurisdictions, but the courts in this state have upheld with great steadiness the general rule that a parol license to do any act on the lands of the licenser while it justifies anything done by the licensee before revocation, is nevertheless revocable at the option of the licensor, and this, although the intention was to confer a continuing right, and money had been expended by the licensee upon the faith of the license. This is plainly the rule of the statute, it is also, we believe the rule required by public policy."

In the case at bar, each time appellee found it necessary to increase and did increase the rental then obtaining, it thereby revoked the existing license; and by the tenant continuing in possession, a new lease was established on the terms embodied in the resolution of the trustees effecting the change. The minutes are freely quoted from to show many instances, extending over a long period of time, when rentals were changed and assessments increased in order to meet the needs of the corporation. How else could new wharves be erected fences kept up, repairs made, etc.? Appellant's son said that his mother never paid any of these extra assessments and levies but Mr. Meyer (who was financial secretary for twenty years or more, and kept the record of all payments made by the various tenants)

testified that Mrs. Bancroft did pay some of these 'extras' and 'doubles.'

In conclusion we submit that the testimony of Mr. Bancroft, where it is not wholly incompetent or immaterial, establishes nothing. Seemingly, in his efforts to make out his case, his statements frequently run contrary to all reason. According to his version, appellee's charter and by-laws are of no effect, the trustees without power to make or enforce rules and regulations, the tenant mightier than his landlord, and the corporation left generally to run itself.

The law is clearly on our side, and as the chancellor decided all questions of fact in our favor, we respectfully submit that the case should be affirmed.

SMITH, C. J., delivered the opinion of the court.

The appellant was a tenant of the appellee from year to year, and it does not appear that she agreed to pay the increase in the rent of the land here sought to be recovered. Conceding, for the sake of the argument, that the appellee notified the appellant before the beginning of the series of years for which this increase in rent is sought to be recovered that they intended to so increase the rent, the appellant did not, by merely remaining on the land, become liable therefor. She has the right to hold the land until the tenancy is terminated by the appellee in the statutory manner, and is liable only for the rent she agreed to pay.

Reversed and bill dismissed.

*Reversed.*