[No. 2391]

PAUL GARSON, CHARLES DEGIOVANNI, L. PRO-SOLE; JOHN PECETTI, PIETRO QUILLICI, A. L. LAUGHTON, M. NORTENSEN, H. HANSEN, LOUIS GARDELLI, LASSARO CERVERI, A. PINCOLINI, S. GARAVENTA, H. BERSANI, JOHN PROSOLE, JOHN B. PECETTI, JULIUS LOMBARDI, DOMINIC CERFOGLIO, PETER CERFOGLIO, PICETTI LORENZO, MARTIN AGUERRELIARE, JERRY ZOLEZZI, GANDOLFO PIETRO, CHARLES DONDERO, J. II. SMITH, G. MARCHI, B. CAPURRO, RICK DE BERNARDI, AND C. ELGES, RESPONDENTS, v. STEAMBOAT CANAL COMPANY (A CORPORATION), APPELLANT.

[185 Pac. 801, 1119]

1. PUBLIC SERVICE COMMISSIONS—APPLICABILITY OF ACT OF 1919 TO APPEAL FROM JUDGMENT IN CASE BROUGHT UNDER ACT OF 1911.
    Where the facts involved in action to enjoin enforcement of rates fixed by public service commission under Stats. 1911, c. 162, transpired before the "act defining public utilities," etc. (Stats. 1919, c. 109), took effect, the appeal from the judgment was governed by former act, in view of section 44 of latter act.

2. APPEAL AND ERROR—CHANGE OF THEORY ON APPEAL.
    An act should not be alleged by a party in his pleading and denied by him on appeal.

3. WATERS AND WATERCOURSES—REGULATION—"PUBLIC UTILITY"—"PLANT."
    A canal company, engaged in the business of delivering water to a number of users for agricultural and other purposes, held a "public utility," within Stats. 1911, c. 162, sec. 3, making

a corporation, which owns, operates, or controls "any plant or equipment," or part thereof, for delivery of water to other persons a "public utility," and subject to control of public service commission; the word "plant" not having been used in its precise and technical meaning, requiring pumping station or other mechanical apparatus, and being sufficiently comprehensive to apply to the canal and business of such canal company.

4. PUBLIC SERVICE COMMISSIONS—RULES OF EVIDENCE.

Though the public service commission cannot dispense with the essential rules of evidence which conduce to a fair and impartial hearing on the question of rates, they are essentially empowered with liberal discretion in passing upon the competency of evidence.

5. WATERS AND WATERCOURSES—REGULATION OF RATES—HEARING OF PUBLIC SERVICE COMMISSION.

Public service commission's use, in hearing as to water rates, of testimony and data obtained at former hearings, after due notice that such testimony and data would be considered, and ample time for examination thereof given all the parties to the proceeding, *held* not an abuse of discretion, where a full hearing was held, with full opportunity to all parties to introduce and cross-examine witnesses, and to test, explain, or refute such evidence; the use of such testimony and data not having deprived the parties of any substantial right.

6. CONSTITUTIONAL LAW—REGULATION OF RATES OF PUBLIC UTILITY A LEGISLATIVE FUNCTION.

The power to prescribe rates for a common carrier or a public utility company is a legislative function, as distinguished from judicial power, which the legislature has really exercised in the first instance, by prescribing that all rates shall be just and reasonable.

7. CORPORATIONS—RATES OF PUBLIC UTILITIES.

The right of public utilities to initiate their own rates is subject to the requirement that all rates shall be just and reasonable.

8. PUBLIC SERVICE COMMISSIONS—REVIEW OF ORDER ESTABLISHING RATES.

Under Stats. 1911, c. 162, sec. 26, and in view of Const. art. 4, sec. 20, district court's jurisdiction, on appeal from order of public service commission, is confined to the reasonableness of the rate change; the court having no right to assume administrative functions in establishing what in its judgment seems to be a reasonable rate.

9. PUBLIC SERVICE COMMISSIONS—RESTRAINING ENFORCEMENT OF RATES PENDENTE LITE.

Under Stats. 1911, c. 162, sec. 26, providing that all rates fixed by the public service commission shall be deemed in full force and effect until final determination, district court had no right to grant an injunction pendente lite restraining enforcement of the rate fixed by the commission.

10. CONSTITUTIONAL LAW—REGULATION OF CHARGES NOT A DENIAL
OF DUE PROCESS OF LAW.

Stats. 1911, c. 162, sec. 26, in so far as it provides that all
rates fixed by the public service commission "shall be deemed
reasonable and just and shall remain in full force and effect
until final determination by the courts having jurisdiction," is
not violative of Const. art. 1, sec. 8, guaranteeing that no per-
son shall be deprived of property without due process of law.

11. PUBLIC SERVICE COMMISSIONS—RATES TO REMAIN IN FORCE PEND-
ING JUDICIAL DETERMINATION.

Stats. 1911, c. 162, sec. 26, providing that all rates fixed by
the public service commission "shall be deemed reasonable
and just and shall remain in full force and effect until final
determination by the courts having jurisdiction," does not
require that rates remain in full force and effect until final
determination in the supreme court, but only pending final
determination by district courts.

12. STATUTES—CONSTRUCTION TO GIVE EFFECT TO ENTIRE ACT.

A statute should be construed so as to give effect, if possible,
to all its parts.

13. STATUTES—CONSTRUCTION TO AVOID ABSURD MEANING.

Any reasonable construction which the phraseology of a
statute, or a part of a statute, will bear, must be drawn to
avoid an absurd meaning.

14. PUBLIC SERVICE COMMISSIONS—REVIEW BY COURTS.

Under Stats. 1911, c. 162, sec. 26, courts have no right to
interfere with the public service commission or review its
determination, further than to keep it within the law and pro-
tect the constitutional rights of the public service agencies
over which it has been given control.

15. CONSTITUTIONAL LAW—LEGISLATIVE ENCROACHMENT ON COURTS.

Stats. 1911, c. 162, sec. 26, in so far as it provides that all
rates fixed by the public service commission "shall be deemed
reasonable and just and shall remain in full force and effect
until final determination by the courts having jurisdiction," is
not violative of Const. art. 6, sec. 6, conferring original juris-
diction in all cases in equity upon district courts; such statute
merely establishing a rule of evidence, and not withholding
remedy for imposition of unreasonable rates.

16. CONSTITUTIONAL LAW—LEGISLATURE'S RIGHT TO MAKE RULES OF
EVIDENCE.

Legislature has the undoubted right to prescribe such rules
of evidence as may best promote justice in a particular case.

APPEAL from Second Judicial District Court, Washoe
County; *Thomas F. Moran,* Judge.

Action by Paul Garson and others against the Steam-
boat Canal Company and others. From a judgment
granting a temporary injunction, the named defendant
appeals. **Reversed. Rehearing denied.**

*Norcross, Thatcher & Woodburn,* for Appellant:

Damages that plaintiffs may sustain by the enforcement of the rate in question are such that they can be easily ascertained by a court and jury. The order granting an injunction pendente lite should be reversed and set aside.

The lower court had no authority to grant an injunction pendente lite against the enforcement of a rate fixed by the public utility commission. Stats. 1911, sec. 26, p. 330. Every reasonable doubt must be yielded in favor of the rate. Missouri Rate Cases, 230 U. S. 474; State v. Railroad, 57 South. 175; Minneapolis R. R. Co. v. Minnesota, 186 U. S. 257; Lady Bryan G. & S. M. Co. v. Lady Bryan M. Co., 4 Nev. 414.

The commission informed all parties that it would use and consider testimony given on former hearings, and the records and data on file in its office. No contention is made that the evidence was irrelevant. The most that can be said against it is that it would be incompetent in a court of law. The rules of competency of evidence, for the purpose of admissibility in hearings before commissions, is entirely different from that of common-law courts. I. C. C. v. Baird, 48 L. Ed. 860; I. C. C. v. Louisville N. R. Co., 57 L. Ed. 434.

If the order of the commission was void, the court should not have granted the injunction, because the new rate fixed by the schedule was in effect, the company having the absolute right to initiate its own rate in the first instance. Stats. 1915, p. 47. The filing and publication of a schedule is for the purpose of affording special facilities to the public for ascertaining the rates in force thereunder and for preventing unjust discrimination and rebates. Oregon R. & N. Co. v. Thisler, 133 Pac. 539; U. S. v. Miller, 56 L. Ed. 568. The absolute right to fix rates is retained by the public utility, subject only to the provisions of the statute. I. C. C. v. Chicago G. W. R. Co., 52 L. Ed. 712; L. & N. R. Co. v. I. C. C., 195 Fed. 541; I. C. C. v. Louisville & N. R. Co., 57 L. Ed.

431; Crescent Coal Co. v. Louisville & N. R. Co., 33 L. R. A. 442.

The lower court usurped the legislative and administrative functions and acted beyond its authority when it fixed a rate for the services performed. The court may not substitute what in its judgment may be the proper rate for the judgment of either the public utility or the commission. Atchison R. Co. v. U. S., 232 U. S. 199; Montana R. Co. v. Morley, 198 Fed. 991; S. P. Co. v. C. F. & I. Co., 101 Fed. 779; S. P. Co. v. Campbell, 230 U. S. 537; Simpson v. Shepard, 57 L. Ed. 1511.

*Sardis Summerfield,* for Respondents:

The appeal should be dismissed and the lower court permitted to resume the exercise of its original equity jurisdiction.

The appellant, being a mere ditch owner and operator, cannot be included as the owner, operator or controller of a plant or equipment, either in whole or in part. Public Utility Act, sec. 7.

Subdivision a, section 33, public utility act, is violative of the state constitution. The public service commission is a mere supervising and regulating administrative commission, and cannot be empowered by the legislative and executive branches of the state government to usurp the constitutional functions of the courts. Const. Nev. sec. 8, art. 1; sec. 1, art. 3; sec. 6, art. 6. The constitution expressly delegates "original jurisdiction in all cases in equity" to the district courts.

By the Court, DUCKER, J.:

The appellant corporation, the Steamboat Canal Company, is a public utility engaged in the business of delivering water from the Truckee River, through its canal, known as the Steamboat Canal, to a number of users for agricultural and other purposes. In a former year the public service commission of Nevada had established the rate for the delivery and sale of water to such users at $6.50 per miner's inch per annum, and when paid in

advance on or before June 1 of each year at $6 per miner's inch. On or before May 18, 1918, the Steamboat Canal Company filed with the public service commission a schedule of rates, and therein established a rate of $10 per miner's inch for the the irrigation season. The public service commission entered an order suspending the proposed rate for a period of sixty days, and cited the Steamboat Canal Company to appear and show cause why the rates in force should be increased. A number of water users served by the company filed a protest against the proposed increase in rates, and upon issue thus made a hearing was held before the commission, at which all parties interested appeared, in person or by attorney. During the pendency of the proceedings before the commission the rate proposed was suspended by its order for an additional sixty days. The hearing commenced on the 5th day of August, 1918. It was thereafter continued to October 8, and closed on October 9, 1918. Thereafter, on December 4, 1918, the commission entered an order denying the application of the Steamboat Canal Company for an increase in rates for water service to $10 per inch, and ordered that the rate be established at $7.50 per miner's inch for irrigation purposes for the season of 1918 and each successive year, unless otherwise ordered by the commission. It was also ordered that, if prepayment should be made on or before June 1 of each year, the charge should be $7.25 per inch.

The protestants, being dissatisfied with the ruling of the commission, commenced this action in the district court against J. F. Shaughnessy and W. H. Simmons, as the public service commission of Nevada, and the Steamboat Canal Company, and obtained an order of the court granting an injunction pendente lite restraining the enforcement or collection of the rate of $7.50 per miner's inch designated by the order of the commission, or collection of any greater rate than $6.50 per miner's inch. From the order granting the temporary injunction this appeal is taken.

1. This action was commenced pursuant to section 26 of an act making the railroad commission of Nevada ex officio a public service commission for the regulation and control of certain public utilities, prescribing the manner in which such public utilities shall be regulated, etc., approved March 23, 1911 (Stats. 1911, c. 162) ; but the respondents contend that the disposition of the appeal must be controlled by the provisions of "An act defining public utilities," etc., approved March 28, 1919 (Stats. 1919, c. 109), for the reason that it expressly repeals the former act. If this contention were correct, we do not see how it could alter our decision, for the reason that all of the provisions in the former act having any application to the facts of this case have been reenacted in the latter act, and no additional provisions enacted therein have any bearing on the issue. But it is not correct to say that the law of 1919 controls this appeal. All of the facts of the case transpired before it became effective, and furthermore express provision is made in section 44 of the law of 1919 that the repeal of the former act shall not "affect any act done, right established, or prosecution or proceeding commenced under and by virtue of" it.

2. Respondents assert that the order of the public service commission is void, because no authority is given it by law to regulate the affairs of the Steamboat Canal Company, in that its canal, through which respondents are served with water, does not come within the meaning of the words "plant" or "equipment," used in the statute in defining certain public utilities over which the commission is given supervision. It is conceded that the statute does not otherwise designate the company's property as a public utility. It will be observed that this contention is a radical departure from the complaint, in which the legal right of the commission to supervise and establish water rates for the Steamboat Canal Company is distinctly recognized. In this respect it is alleged in the complaint that the public service commission has authority to fix reasonable rates for

public utilities operating within the state; that the Steamboat Canal Company is a public utility engaged in the delivery of water for agricultural and other purposes within this state; that the rate heretofore fixed by the public service commission by an order duly made and entered pursuant to law is $6.50 per miner's inch, and that the same is still in force. It is thus seen that respondents have formally asserted in their verified complaint the authority of the public service commission to supervise the water rates of the company, which it now contests. While the statute must control as the source of authority for the commission in this regard, the power to do an act should not be alleged by a party in his pleading and denied by him on appeal.

3. Section 3 of the act of 1911 provides:

"The term 'public utility' within the meaning of this act shall embrace every corporation, company, individual, association of individuals, their lessees, trustees or receivers appointed by any court whatsoever, that now or hereafter may own, operate or control any plant or equipment, or any part of a plant or equipment within the state for the production, delivery or furnishing for or to other persons, firms, associations, or corporations, private or municipal, heat, light, power in any form or by any agency, water for business, manufacturing, agricultural or household use, or sewerage service whether within the limits of municipalities, towns or villages, or elsewhere; and the public service commission is hereby invested with full power of supervision, regulation and control of all such utilities, subject to the provisions of this act and to the exclusion of the jurisdiction, regulation and control of such utilities by any municipality, town or village."

If a precise and technical meaning were accorded to the word "plant," confining it strictly to include only such public utilities of this class which delivered water to consumers through the agency, at least in part, of machinery, as a pumping station or other mechanical apparatus, the intention of the legislature would not, in

our opinion, be effectuated. It would contravene the spirit of the act to assume that it was intended to make the right of the consumers served by public utilities of this character to the benefit of the commission's control over rates and service dependent entirely upon whether the water delivered flowed into the ditch or pipe, or was forced into the distributing channel by means of machinery, water wheel, or other apparatus. In Brennan v. Sewerage and Water Board, 108 La. 582, 32 South. 560, it was said that "a system of pipes intended for the distribution of water, but with no provision by which that distribution can be made," may with propriety be called a plant. The term "plant for the delivery of water * * * for agriculture or household use," as used in the statute, is sufficiently comprehensive in its meaning to apply to the canal and business of the Steamboat Canal Company as a public utility, subject under the statute to the supervision and control of the public service commission.

It is also contended by respondents that the order of the commission establishing the rate of $7.50 per miner's inch is void, for the reason that the commission, in determining this rate, took into consideration evidence taken at former hearings and data on file with the commission relative to the Steamboat Canal Company in its dealings with the water users. The following extracts from the record of hearing held on August 5, showing statements made by the commissioners and Mr. Kearney, attorney for the protesting water users, have considerable bearing on the merit of this contention:

"Commissioner Bartine—There is no question of the value of the property. The commission has passed upon that, and determined that the property has a certain value. It is rather hard for me to see how we can depart from that, unless there is a showing made by the company that we are wrong. We will give you any opportunity that you desire to show that it is an overvaluation. You can take any reasonable time for it. These charges are largely a matter of bookkeeping, and, when the decision is finally rendered it will cover the whole thing.

· "Commissioner Simmons—I want to say, for this commission, that, in view of no testimony having been introduced in this case bearing upon the valuation of the ditch, the commission will avail itself of the data which it already has, and which are official, with reference to the value of the ditch. If you can show that there is a change in the value of the ditch, other than what we now have before us, then that will be given consideration. But in view of the fact that the question of the valuation of the ditch has not been gone into in this case, either by counsel or stipulation, we would use the data that we already have and which are available, in basing our opinion in the present case.

"Mr. Kearney—In regard to that stipulation I would like to say that, if that testimony is used for the purpose of rehearing and reopening the old case, I would object to it.

"Commissioner Bartine—We do not intend to reopen the old case at all.

"Mr. Kearney—As I understand it, the rate of $6 per inch was fixed upon as a reasonable return for a certain valuation found by the commission, after the testimony had been considered. Now, then, I don't want the commission to reconsider that testimony, and find a different valuation at this time, without having an opportunity to be heard.

"Commissioner Bartine—I do not think it will ever be done; so far as I am concerned it will not be. So far as we have gone into this case, the question of valuation does not cut any figure. The application for an advance in rates is based on figures of cost of material and labor."

It is evident from these statements of the commissioners that the commission had fixed the company's property at a certain valuation at former hearings, and that they intended considering the evidence obtained for this purpose, and would make no change in such valuation without a showing made by the company or the water users. Under the circumstances, no prejudice could have resulted to any of the parties from the action of the commission. Certainly there was nothing in this

regard, in view of the full hearing that was held and ruling made upon substantial evidence introduced, that could render the subsequent order of the commission a nullity. Notice of intention to use the former evidence, and the purpose for which it would be considered, was given to all parties at the beginning of the proceedings. They were all present, either in person or by attorney, and were informed that ample time would be given for examination of the proposed evidence and data on file with the commission, or to make any showing against it. More than two months elapsed from the time notice was given until the hearing was closed, and so far as the record discloses no effort was made by the water users to examine the evidence or refute it in any way. Their knowledge of its general character may be fairly assumed from the fact that it was adduced at former hearings held by the commission to establish rates for the Steamboat Canal Company. It was therefore not extraneous evidence, unknown to the parties, but known, available, and specifically called to their attention in ample time for inspection, explanation, or contradiction, and we may assume, from the references made to it in the record, was in the main of a character essential to a proper determination of a reasonable rate for water service.

The facts recited do not bring the case within the ruling advanced in Interstate Commerce Commission v. Louisville Railroad Co., 227 U. S. 88, 33 Sup. Ct. 185, 57 L. Ed. 431, so much relied on by respondents. The government insisted in that case that, as an act of Congress provided that a carrier's rates should be set aside if, after a hearing, the commission shall be of the opinion that the charge was unreasonable, an order based on such opinion was conclusive, and could not be set aside, even if the finding was wholly without substantial evidence to support it. It was further insisted that the commission was required by law to obtain information necessary to enable it to perform the duties and carry out the objects for which it was created, and, having been given legislative power to make rates, it

could act, as could Congress, on such information, and therefore its findings must be presumed to have been supported by such information, even though not formally proved at the hearing. These contentions were denied by the court, and it was held that neither of these statutory provisions could in effect empower the commission to decide as to the reasonableness or unreasonableness of rates without a hearing required by the statute at which "all parties must be fully apprised of the evidence submitted, and must be given an opportunity to cross-examine witnesses, to inspect documents, and to offer evidence in explanation or rebuttal." With reference to the latter contention, as to the right of the commission to act upon information gathered for the purposes of investigation, the court said:

"But such a construction would nullify the right to a hearing, for manifestly there is no hearing when the party does not know what evidence is offered or considered, and is not given an opportunity to test, explain, or refute."

The order of the commission was upheld, because there was substantial evidence to support it.

4. In the instant case the order of the commission was not without substantial evidence to support it, nor did the commission base its order upon extraneous evidence, as was asserted to be the power of such administrative boards in Interstate Commerce Commission v. Louisville and Nashville Railroad Co., supra. As previously stated, a full hearing was held, at which all parties were represented, and cognizant of the evidence submitted, and given every reasonable opportunity to introduce witnesses, to cross-examine, to test, explain, or refute any evidence to be considered by the commission. The consideration of the testimony and data obtained at the former hearings, after due notice that it would be submitted and considered, was an infraction of the strict rules of evidence which prevail in the trial of cases in courts of law, but administrative boards of this character are not hampered by technical procedure. True, they cannot dispense with the essential rules of evidence

which conduce to a fair and impartial hearing, but, from the nature of their organization and the duties imposed upon them by statute they are essentially empowered with liberal discretion in passing upon the competency of evidence.

5. If it were otherwise, the policy of the law, in conferring authority upon the public service commission to supervise and regulate the rates, would be in a large measure frustrated. Interstate Commerce Commission v. Louisville & N. R. R. Co., supra. On the facts of this case we are not prepared to say that the action of the commission in considering the testimony and data complained of by respondents was an abuse of discretion by the commission, or that it deprived respondents of a substantial right.

We now come to a consideration of the injunction pendente lite, which appellants contend the trial court was without authority to grant. The collection of the rate designated in the order of the commission, or of any rate greater than or in excess of $6.50 per miner's inch per annum, was restrained by the injunction. The effect of this order of the district court is to revise and modify the order of the commission establishing a rate of $7.50, and substitute a rate of $6.50 in its stead. Authority for the district court to interfere with the findings of the commission in this case is found in section 26 of the act of 1911, and nowhere therein has the legislature sought to confer upon the courts power to fix the rate of any public utility or change the rate established by the commission. Section 26 reads in part:

"Any party in interest being dissatisfied with an order of the commission fixing any rate or rates, fares, charges, classifications, joint rate or rates, or any order fixing any regulations, practices or services, may within ninety (90) days commence an action in the district court of the proper county against the commission and other interested parties as defendants to vacate and set aside any such order on the ground that the rate or rates, fares, charges, classifications, joint rate or rates, fixed in such order are unlawful or unreasonable, or that any

such regulation, practice, or service, fixed in such order is unreasonable. *   *   *

"(a) No injunction shall issue suspending or staying any order of the commission except upon application to the court or judge thereof, notice to the commission having been first given and hearing having been had thereon; provided, that all rates fixed by the commission shall be deemed reasonable and just and shall remain in full force and effect until final determination by the courts having jurisdiction.

"(b) If, upon the trial of such action, evidence shall be introduced by the plaintiff which is found by the court to be different from that offered upon the hearing before the commission, or additional thereto, the court, before proceeding to render judgment, unless the parties to such action stipulate in writing to the contrary, shall transmit a copy of such evidence to the commission, and shall stay further proceedings in said action fifteen (15) days from the date of such transmission. Upon receipt of such evidence the commission shall consider the same, and may later modify, amend or rescind its order relating to such rate or rates, fares, charges, classifications, joint rate or rates, regulation, practice or service complained of in said action, and shall report its action thereon to said court within ten days from the receipt of such evidence.

"(c) If the commission shall rescind its order complained of, the action shall be dismissed; if it shall alter, modify or amend the same, such altered, modified or amended order shall take the place of the original order complained of, and judgment shall be rendered thereon, as though made by the commission in the first instance. If the original order shall not be rescinded or changed by the commission, judgment shall be rendered upon such original order."

By these provisions the court is empowered only to vacate or set aside any order of the commission on the ground that the rate fixed therein is unlawful or unreasonable, or confirm it if the rate is lawful and reasonable. In fact, it is the policy of the act, as evidenced

from its plain terms, to leave with public utilities the right to initiate rates subject to the revisionary action of the commission.

6. The power to prescribe rates for a common carrier or a public utility company is a legislative function as distinguished from judicial power (Southern Pacific Co. v. Colorado Fuel & Iron Co., 101 Fed. 783, 42 C. C. A. 12), which the legislature has really exercised in the first instance by prescribing that all rates shall be just and reasonable.

7, 8. The right of public utilities to initiate their own rates is subject to this statutory requirement and the public service commission is legally constituted and given jurisdiction by prescribed procedure to give effect to the legislative will. The district court to which an appeal may be taken is therefore, on review, confined to a determination of the issue of the reasonableness of the rate challenged. It may ascertain whether the legislative mandate that rates shall be just and reasonable has become effective through the agency of the commission. But, being without legislative or administrative functions, its jurisdiction ends there. It cannot proceed further, and assume administrative functions in establishing what, in its judgment, seems to be a reasonable rate. Spring Valley Waterworks v. City and County of San Francisco (C. C.) 192 Fed. 144; Madison v. Madison Gas and Electric Co., 129 Wis. 249, 108 N. W. 65, L. R. A. (N.S.) 529, 9 Ann. Cas. 819; Reagan v. Farmers' Loan and Trust Co., 154 U. S. 397, 14 Sup. Ct. 1047, 38 L. Ed. 1014; Pond on Public Utilities, secs. 440–446, and cases cited; State v. Great Northern Ry. Co., 130 Minn. 57, 153 N. W. 247, Ann. Cas. 1917B, 1201.

As said in the case of Baltimore and Ohio R. R. Co., appellant, v. Public Service Commission, 6 Pa. Super. Ct. 403, and commended in Ben Avon Borough v. Ohio Water Co., 260 Pa. 289, 296, 103 Atl. 744, by the supreme court of that state:

"Establishing a schedule of the rates or tolls that a public service company may lawfully demand is one of the most complicated and important * * * tasks imposed

by the legislature on the public service commission. The proper determination of such questions necessarily involves the consideration of many matters and many things far removed from the atmosphere of an appellate court."

That the court cannot fix the rate itself, however, but is limited in its jurisdiction in determining whether a rate, when fixed, is reasonable and proper, is the generally accepted rule as expressed in the case of Nebraska Tel. Co. v. State, 55 Neb. 627, 76 N. W. 171, 45 L. R. A. 113, decided in 1898, as follows:

"Here the court determines that the respondent shall perform for the relator a specific service for three months for a specific sum of money. This in effect was a determination by the court that $3 per month was a reasonable compensation for the service required to be rendered by the respondent, and a fixing of the compensation for such service at that price for the future. We think the history of the legislation of the entire country shows that the power to determine what compensation public service corporations may demand for their services is a legislative function and not a judicial one."

If it were conceded that the courts of this state could fix or revise the rates a public utility could charge, would not the legislature have performed a vain act in establishing another administrative body for the same purpose? But the courts are precluded by the constitution from performing legislative functions, and the framers of the organic law recognized that power to fix the compensation for common carriers or public utility service was a legislative one. Section 20, article 4, of the state constitution, which precludes the legislature from exercising certain powers, also provides:

"But nothing in this section shall be construed to deny or restrict the power of the legislature to establish and regulate  *  *  *  the rates of freight, passage toll, and charges of railroads, toll roads, ditch, flume and tunnel companies incorporated under the laws of this state or doing business therein."

And it is quite clear that the legislature has acted

upon the theory that this power to fix the compensation of common carriers and public service corporations is one vested in it by the constitution. This is evident from its creation of commissions for that purpose, and the powers conferred upon them, as well as from the provisions limiting the courts in review. Nebraska Tel. Co. v. State, supra.

9. It results from what we have said that the district court was without authority to revise the order of the public service commission in this case and fix the rate of service at $6.50 per miner's inch per annum. We also conclude that the court was likewise wrong in vacating the order of the commission establishing the rate of $7.50 per miner's inch and restraining its collection by the Steamboat Canal Company. As already pointed out, section 26 provides:

"That all rates fixed by the commission shall be deemed reasonable and just, and shall remain in full force and effect until final determination by the courts having jurisdiction."

The lower court disregarded this provision of the statute in vacating the order of the commission and in granting an injunction pendente lite. No reason for this action appears from the record, but as the statute is mandatory, and, as counsel for respondents insists in this court, that it is unconstitutional, we assume that the lower court entertained the same view.

10, 11. It is contended that the proviso is violative of section 8 of article 1 of the constitution, guaranteeing that "no person shall be * * * deprived of * * * property, without due process of law," and of section 6 of article 6 of that instrument which confers "original jurisdiction in all cases in equity" upon the district courts. It is urged that the proviso deprives the district court of its equitable powers in this class of cases. We do not share these views and apprehend that may arise partially from a misconstruction of the provision. It is insisted that it is meant by the proviso that the rates shall remain in full force and effect until the final

determination in the supreme court. The proviso does not
contain the words "court having appellate jurisdiction"
or designate the supreme court; yet these would have
been natural and appropriate expressions, if the con-
struction claimed by the respondents should prevail.
The language is "until final determination by the courts
having jurisdiction," and we are persuaded that it was
meant to declare that the rates should be maintained
pending a final determination by the district courts.

12, 13. A statute should be construed so as to give
effect if possible to all its parts; and this construction
harmonizes the proviso with the other parts of the sec-
tion providing for trial and judgment in the district
court and gives a reasonable effect to the proviso itself,
notwithstanding its language is not exactly accurate in
expressing the legislative intent. An absurdity in legis-
lative language is never presumed, nor found by the
courts, unless revealed in clear and unmistakable terms.
Any reasonable construction which the phraseology of a
statute, or a part of a statute, will bear must be drawn
to avoid an absurd meaning, upon the theory that legis-
lators are men of ordinarily good sense. If we should
construe the proviso to mean that the rates fixed by the
commission shall remain in full force and effect until
final determination by the supreme court, we should
charge the legislature with a gross absurdity in provid-
ing for a trial in one part of section 26 and defeating
the purpose of the trial in another part of the section.

Section 26 provides that a party, dissatisfied with an
order of the commission fixing a rate, may commence an
action in the district court "to vacate and set aside any
such order" on the ground that the rate is unlawful and
unreasonable, and that "judgment shall be rendered
upon such original order," or upon any modification,
alteration, or amendment of the original order which
may be made by the commission pending the trial of the
case. Manifestly it was not intended to provide in sec-
tion 26 for a trial in the district court to test the reason-
ableness of a rate fixed by the commission giving the

court power to vacate the order of the commission fixing it, and then by the proviso to prevent a judgment in case the rate is found to be unreasonable. The purpose of the proviso is, we think, reasonably apparent to maintain the rate during the pendency of the trial and until final judgment in the district court. And this provision does not, in our opinion, trench upon the constitutional guaranty of due process of law. The provision objected to must be taken in connection with the entire act of which it is a part when considered as to its encroachment upon the constitutional guaranty of due process of law. The ultimate purpose of the act is to regulate and control certain classes of business impressed with a public interest.

The public service commission act is the direct outgrowth of an urgent and persistent public demand for prompt, intelligent, and effective public control of public utilities. It is founded on necessity and convenience. Competition did not prove effective in preventing monopoly by public utility companies and its consequent burden on the public in the different classes of public service rendered by them. It is recognized, also, that the rate-making power and the power to regulate and control these enterprises, vested by the constitution in the legislature, could not be conveniently exercised by that body to meet the changing conditions, which make the rates a public utility may lawfully charge for its service vary in value from time to time. These exigencies were met by the legislature in the formation of the governmental agency designated, in the act creating it, as a public service commission. The law presumes that the members of the commission shall be men trained in those lines of business in which public utilities are engaged, and who can fairly and intelligently adjust the complex questions that constantly arise. Necessarily to make the act effective to answer the purposes of its enactment, the commission has been clothed with broad discretionary powers; and to further accomplish these purposes the orders of the commission as to rates

and charges have been made prima facie lawful from the date of the order until changed or modified by the commission, or until found to be unreasonable in pursuance of section 26 of the act. Section 25.

"In all actions under this act the burden of proof shall be upon the party attacking or resisting the order of the commission to show by clear and satisfactory evidence that the order is unlawful, or unreasonable, as the case may be." Section 26, subd. e.

14. It was not intended that the courts should interfere with the commission, or review its determinations, further than to keep it within the law and protect the constitutional rights of the public service agencies over which it has been given control. In view of the salutary public policy of the act, and the ample provision made for notice and full hearing before the commission, at which the public utility complained of and the complainant are entitled to appear by counsel, and the ample provisions made for the production and presentation of their proofs, it was competent for the legislature to prescribe that the rates fixed by the commission should abide during the temporary season of a trial to test their reasonableness. The rates fixed by the commission are not conclusive. The courts are open for a review of the proceedings of the commission, and the right is given to the parties to adduce evidence in addition to that introduced on the hearing before the commission. In order to facilitate the trial to the end that a speedy determination of the question of the reasonableness of the rates may be obtained, it is provided in section 26 that:

"All actions brought under this section shall have precedence over any civil cause of a different nature pending in such court, and the court shall always be deemed open for the trial thereof, and the same shall be tried and determined as other civil actions."

"Due process of law merely requires such tribunals as are proper to deal with the subject in hand. Reasonable notice and a fair opportunity to be heard before some tribunal before it decides the issues are the essentials of

due process of law." Stettler v. O'Hara, 69 Or. 519, 139 Pac. 746, L. R. A. 1917c, 944, Ann. Cas. 1916a, 217.

We think that none of the essentials necessary to insure to the parties a full guaranty of due process of law are absent from the statute, nor impaired by the provision under consideration.

What we have said as to the nature of the legislation concerning public utilities applies with equal force to the objection that the proviso invades the equitable jurisdiction of the district court. The statute makes the findings of the commission upon questions of fact prima facie evidence of the reasonableness of rates on review in the district courts. This in itself might be urged as some curtailment of equitable jurisdiction, for generally in equity cases the court may find a fact from the evidence, and is not bound by a rule that, if there is evidence to support a fact, it thereby becomes conclusive.

15, 16. But still statutes identical with the provisions making the findings of the commission prima facie evidence of reasonableness of rates have been uniformly upheld by the courts against constitutional objections, upon the theory that no person has a vested right in any rule of evidence. The legislature has the undoubted right to prescribe such rules of evidence as may best promote justice in a particular case. The provision complained of does not prevent parties from exhibiting their rights on the trial of the case, but merely establishes a rule of evidence which may not be overcome until issue is joined and the proofs presented for final determination. The proviso does not withhold a remedy for the imposition of unreasonable rates. The remedy is merely deferred for a period of time which, considering the policy of the law towards the establishment of rates by the commission, cannot be said to be unreasonable, especially in view of the fact that the statute accelerates the trial of this class of cases by giving them precedence over all civil causes of a different nature.

The order of the district court, granting an injunction pendente lite restraining the collection of the rate of

$7.50 per miner's inch per annum fixed by the order of the public service commission as the rate of service to be charged by the Steamboat Canal Company, and restraining the collection of any greater rate than $6.50 per miner's inch per annum, is hereby reversed.

## ON PETITION FOR REHEARING

By the Court, DUCKER, J.:

The petition for rehearing filed by respondents has been given careful attention. It discusses questions that were duly considered and disposed of in the opinion of the court. As we are convinced, after further research and reflection, that these questions were correctly determined, we are impelled to deny the petition.

In the petition our attention has been directed to a certain unguarded statement made in the opinion which we desire to correct. In the course of the discussion of the questions raised, the writer of the opinion referred to an action commenced in the district court to vacate and set aside an order of the commission, as an appeal. That this was an inadvertent expression is apparent from other parts of the opinion, but we desire to expressly correct it, so that no erroneous conclusion might arise from a consideration of the decision. The action commenced in the district court is not an appeal, though it is in some sense a review, for the statute clearly contemplates a consideration by the trial court of the evidence offered upon the hearing before the commission. Section 26 of the act of 1911 (chapter 162) making the railroad commission of Nevada ex officio a public service commission. See, also, section 33 of the act of 1919 (chapter 109) defining public utilities, etc. The opinion is therefore corrected in this respect.

Rehearing in the above-entitled matter is hereby denied.