NENZEL *v.* ROCHESTER SILVER CORPORATION

No. 2624

July 1, 1924.                    226 Pac. 1102.

1. APPEAL AND ERROR—TENANT PLEADING A LEASE CANNOT ON APPEAL DENY RELATIONSHIP OF LANDLORD AND TENANT.

In an action under Rev. Laws, sec. 5588, as amended by Stats. 1917, c. 27, sec 1, against a tenant holding over for possession of premises and water right, where defendant pleaded a lease, it could not insist on appeal that the relationship could not exist, because water rights are incorporeal hereditaments in which tenancy could not exist.

2. WATERS AND WATERCOURSES—PURCHASER HELD TO TAKE SUBJECT TO PRIOR LEASE BY VENDOR.

Where a water right was leased in writing for five years with option of extension, and the lessor and lessee orally agreed as to the rental, subsequent purchasers of the water right took subject to lease and oral agreement.

3. VENDOR AND PURCHASER—GRANTEE OF REVERSION SUBJECT TO LEASE BOUND TO NOTICE RIGHTS OF TENANT IN POSSESSION.

A grantee of a reversion subject to lease made by the grantor must take notice of all rights of tenant in possession.

4. WATERS AND WATERCOURSES—PURCHASER TAKING SUBJECT TO LEASE COULD NOT INCREASE RENT, EXCEPT BY AGREEMENT.

Where purchasers took subject to all the rights of a lessee in possession under a prior lease, they could not increase rent for unexpired portion of the term, except by an agreement supported by a consideration good in law.

5. WATERS AND WATERCOURSES—CONTINUED USE OF WATER RIGHT BY TENANT NOT ASSENT TO INCREASE OF RENT BY PURCHASER SUBSEQUENT TO LEASE.

Where a lessee of a water right in possession at the time of its sale by the lessor did not pay an increased rental demanded by the purchaser, its remaining in possession did not make it liable, since it had a right to hold the property till the end of its term, and was liable only for the rent agreed upon with the lessor.

6. LANDLORD AND TENANT—FAILURE TO NOTIFY LANDLORD HELD NOT TO PREVENT "EXTENSION" OF LEASE; "RENEWAL"; "OPTION OF EXTENSION"; "OPTION OF RENEWAL."
    Where a lease provided that the lessee at its election should have a right to an extension for a period of five years at the termination of the lease, no formal notice of election to extend was necessary; there being a distinction between the "extension" of a lease and a "renewal," and between an "option of extension" and an "option of renewal."

7. LANDLORD AND TENANT—NO NOTICE NECESSARY TO EXERCISE OPTION TO EXTEND LEASE.
    Where a lessee has an option to have the term extended, no notice of an election to have the term continued is necessary, unless lease requires it.

See (1) 4 C. J. sec. 2608, p. 701, n. 47; (2, 4, 5,) 40 Cyc. p.. 759, n. 49 (new) ; p. 760, n. 58 (new) ; (3) 39 Cyc. p. 1756, n. 47; (6, 7) 35 C. J. sec. 175, p. 1036, n. 30.

APPEAL from Sixth Judicial District Court, Pershing County; *James A. Callahan,* Judge.

Action by Joseph F. Nenzel and others against the Rochester Silver Corporation and another. From judgment for plaintiffs, the named defendant appeals. **Reversed and remanded.** (DUCKER, C. J., dissenting.)

*C. H. McIntosh* and *John F. Kunz* for Appellant:

Estoppel doctrine between landlord and tenant does not preclude grantee showing his derivative title, nor prevent lessee from attacking validity of transfer from original landlord. 24 Cyc. 945, note 19.

In determining right to use of water, rule of estoppel does not prevail as to right of lessee to deny title of landlord. Rule applies to corporeal, not incorporeal hereditaments. General good of community is to be considered. No absolute title is acquired, merely right to use thereof. 22 R. C. L. 48; 1 Wiel on Water Rights, 585; Swift v. Goodrich, 11 Pac. 561; 1 Washburn Real Property, 310.

Leases or loans of water rights cannot create relation of landlord and tenant. A water right may be sold outright for use on different land but cannot be leased for temporary use. A lease of water right does not bring on law of estoppel that applies between landlord

and tenant. 1 Wiel, 585; 1 Washburn, 310. All waters within state belong to public. 3 Rev. Laws, 3243. Absolute title to water cannot be acquired. A usufructuary right alone attaches. Possession by tenant is prima facie evidence of title. Lessee is not estopped to deny lessor's title where land leased was public domain. Wilder v. McCob, 30 S. W. 822.

Evidence fails to show issuance of permit. Therefore water belonged to state with defendant in possession. Where statutes prohibit occupation or use of public lands, tenant is not estopped to deny landlord's title. Arkansas Hot Springs Case, 96 U. S. 698.

Ejectment will not lie for incorporeal hereditament. Redemiger v. Cunningham, 215 Pac. 87.

Contracts for use of water cannot technically raise relation of landlord and tenant. Remedy for grievance of alleged grantor is by suit in equity. Redemiger v. Cunningham, 122 Pac. 567.

*M. B. Moore* and *Wm. McKnight,* for Respondents:

A water right is real property. Kinney on Irrigation (2d ed.), 1328; Wiel on Water Rights (3d ed.), 298.

A conveyance of real property can be made only by deed. Rev. Laws, 1017.

Tenant is estopped to deny title of landlord before surrender. 34 Cyc. 934; 16 R. C. L. 649–50–51.

Modification of contract must be assented to by both parties. It is new contract and must be supported by consideration. 6 R. C. L. 914, 916.

Statute of Frauds prevents enforcement of oral lease. Rev. Laws, 1069, 1071, 1075. Where there is part performance, terms must be clearly established. Evans v. Lee, 12 Nev. 399; 25 R. C. L. 567.

Tenant who does not pay rent or surrender after due notice is guilty of unlawful detainer. Rev. Laws, 5588, as amended 1917 Stats. 31. Notice may be signed by attorney. Felton v. Millard, 21 Pac. 533; 22 Pac. 750. Technical nicety is not required in notice. Houghton v. Potter, 23 N. J. Law, 338; Samuels v. Greenspan, 58 Pac. 482; Miller v. Hall, 60 Pac. 196.

Having litigated other matters involved without objection to notice, defendant cannot now object that proper notice was not served. Rabe v. Fyler, 48 Am. Dec. 765; Wolfer v. Hurst, 8 Ann. Cas. 730.

Defendant waived right to notice to quit or demand of possession by denying title. 25 L. R. A. (N.S.) 104; 24 Cyc. 1403.

## OPINION

By the Court, SANDERS, J.:

This is an action against a tenant holding over, for possession of the premises, under section 646 of the Civil Practice Act (section 5588, Rev. Laws), as amended by chapter 27 of the statutes of 1917, page 31, which provides:

"A tenant of real property, for a term less than life, is guilty of an unlawful detainer:  *  *  *

"When he continues in possession, in person or by subtenant, after default in the payment of any rent and after a notice in writing requiring in the alternative the payment of the rent or the surrender of the detained premises, shall have remained uncomplied with for the period of three days after service thereof. Such notice may be served at any time after the rent becomes due."

While the complaint is made to run against two defendants, it is obvious from the record that the Rochester Silver Corporation is the real party defendant in interest, and the defendant C. H. Patterson, who did not appear in the action, was joined on the assumption that he was in possession when the suit was begun.

By agreement of parties the case was tried to the court, judgment rendered for restitution, and against the Rochester Silver Corporation for the sum of $4,006.01, as rent at $200 per month from the first day of August, 1921, to the date of judgment, to wit, May 21, 1923. The Rochester Silver Corporation appeals from the judgment and from an order denying its motion for new trial.

The plaintiffs sue as trustees for the Mineral Production and Refining Companies, which, on the 3d day of

January, 1921, acquired title through mesne conveyances to a water right, together with that certain mining claim called the Cotton Tail lode mining claim, a pumping plant and pipe line constructed to divert the water from its natural source of supply—a spring—into a tank used for the distribution of the water. The Rochester Silver Corporation claims the right to the' use of the water and water system under a prior lease, duly assigned to the Rochester Mines Company and a subsequent oral agreement with the then owner and lessor, Joseph F. Nenzel, for the use of the water at a fixed rental of $30 per month, it to pay for the maintenance and operation of the water plant as provided in the assigned lease.

1. The Rochester Silver Corporation insists for the first time on appeal from the judgment that the court below was without jurisdiction to render the judgment it did, in that leases or similar transactions in water rights cannot create the relation of landlord and tenant, since water rights are incorporeal hereditaments in which tenancy cannot exist. Weil on Water Rights (3d ed.) sec. 548. Technically this is so, but, having admitted in its answer that the relationship existed, the defendant corporation is in no position to now insist that as a matter of law the relationship did not exist because of the character of the property. The very issue tendered by the corporation was that it claimed the right to the use of the water and water plant under and by virtue of a lease for a specified term of years with the privilege of an extension for another term, if it should so elect. An act should not be alleged by a party in his pleading and denied by him on appeal. Garson v. Steamboat Canal Co., 43 Nev. 298, 185 Pac. 801, 1119.

The case as presented on appeal involves the determination of two questions of law: One, whether the defendant corporation, which entered under a senior lease, duly assigned to it, is entitled to hold the property as against plaintiffs, the owners in fee under a junior conveyance. The other, whether plaintiffs are entitled to recover a rental of $200 per month as compensation

for the use of the property from August 1, 1921, to the date of the judgment herein.

In view of the full and complete findings of fact and the conclusions of law it is unnecessary to summarize the pleadings.

The court found the facts to be, in substance, as follows:

In February, 1917, Joseph F. Nenzel, one of plaintiffs' predecessors in interest, proposed, in the form of a letter addressed to the Nenzel Crown Point Mining Company, to secure for the company a contract for a period of five years for supplying the company's purposed milling plant with water required by said plant, or such amount of water as the source would produce, in consideration of the payment of a monthly sum which would cover the cost of operation, together with the interest on the invested capital. On the 8th day of May, 1917, Joseph F. Nenzel obtained a permit, No. 4259, from the state engineer of Nevada to appropriate the water in question. Thereafter, on, to wit, the 15th day of May, 1917, said Nenzel, as party of the first part, and said company, as party of the second part, agreed in writing as follows:

"For the term of five (5) years from and after the date hereof the party of the first part agrees to furnish the water from that certain spring situate on the east side of Nenzel Hill, about 1,000 feet in a northerly direction from the mill site of said second party, known as the American Canyon Spring, Rochester mining district, Humboldt County, State of Nevada, or so much thereof as may be required for the milling plant of said second party.

"Party of the first part is to have the election, if he so desires, of constructing a pumping plant at said spring and a pipe line therefrom to said mill, in which event party of the second part shall pay to the party of the first part monthly, on the 15th day of each and every month during the term hereof, or any extension of said term, an amount equal to the cost of operating said pumping plant and interest at eight (8) per cent per

annum upon the amount of the cost of the construction of said pumping plant and said pipe line.

"In the event said party of the first part shall not construct such pumping plant and pipe line, the said party of the second part may construct the same, in which event the said first party agrees to furnish the water from said spring, or so much thereof as may be required, without any compensation therefor.

"Upon the termination of the term hereof said party of the second part shall have the right to an extension for a further term of five (5) years, if it shall so elect."

The purposed milling plant was never built, but the Nenzel Crown Point Mining Company used the water in operating its mine for a period of approximately two years, when the company assigned its interest in the contract to the Rochester Mines Company, the defendant's immediate predecessor. Afterwards, by oral agreement between Nenzel and the Rochester Mines Company, a rental of $30 per month was fixed by the parties as a reasonable rent for the use of the water. Under the agreement said rentals were paid to Nenzel and to plaintiffs to and including the month of July, 1921, and said rentals were received as payment in full. In July, 1921, plaintiffs rendered the Rochester Silver Corporation a bill or statement, in substance showing that plaintiffs claimed a rental of $200 per month for the use of the water instead of $30 per month. It was found that during the summer of 1921 the Rochester Silver Corporation, in an attachment proceeding against the Mineral Production and Refining Companies, paid to plaintiff in said attachment suit for the benefit of the Mineral Production and Refining Companies the sum of $120.65, which sum was allowed by the court as a credit on the rental at $200 per month.

The court found that the lease from Joseph F. Nenzel to the Nenzel Crown Point Mining Company expired on the 15th day of May, 1922, unless the same was renewed. Prior to the date of the expiration of the lease the Rochester Silver Corporation, by one of its proper officers, wrote said Nenzel a letter informing and notifying

him that the corporation, as successor of the Nenzel Crown Point Mining Company, elected to continue the lease for another five years. The letter was inclosed in an envelope properly directed to said Nenzel, and, .as was the custom of the office, placed in a basket to be mailed by one of its clerks. The court found that the letter was never received by the addressee, and there was no evidence to show that the letter was actually posted. During all of the times herein mentioned the defendant corporation remained in the possession of the water works, maintained and operated the same at its own expense, and used the water in and about its mine and for domestic purposes. On the 18th day of July, 1922, nearly a year after the rendition of the bill or statement showing that plaintiffs claimed rent at $200 per month instead of $30 per month for the use of the water, plaintiffs made demand in writing upon the defendant corporation to pay said rent of $200 per month or to surrender the premises within three days after service of said demand. The defendant refused to do either.

The conclusions of law drawn from these findings of fact are substantially as follows: That plaintiffs are entitled to restitution of the premises upon two grounds: First, the original contract of lease from Nenzel to the Nenzel Crown Point Mining Company is too indefinite and uncertain to be enforced except as a tenancy at law; and second, there is no evidence of a renewal of the lease.

Upon the issue of the amount of rent the court concluded that, since the water in question belonged to plaintiffs, it was their right to increase the rental even to an exorbitant amount, and, plaintiffs having increased the rent to $200 per month, the court was powerless to reduce the amount to a reasonable sum, and the defendant had but one option, which was to either pay the increased rent or terminate the tenancy, and, therefore, plaintiffs were entitled to recover rent at $200 per month for the use of the water from August 1, 1921, and to recover judgment for the restitution of the water right and the Cotton Tail lode mining claim, but not for

the pumping plant, pipe line, tank, and other equipment on the ground, because plaintiffs had failed to establish that said articles were fixtures. In accordance with these findings and conclusions judgment was rendered for the restitution of the water right and said mining claim and against the defendant corporation for the sum of $4,006.01, as rent at $200 per month.

Referring to the parties as they stood in the court below, the defendant, Rochester Silver Corporation, assails the findings of fact, conclusions of law, and the judgment upon several grounds. The question of first importance involves the validity of the judgment for the sum of $4,006.01, as rent at $200 per month from August 1, 1921. We are unable to discern any principle of law on which the judgment can be sustained. It appears from the complaint that plaintiffs proceeded upon the theory that when they acquired title to the premises by deed bearing date on the 3d day of January, 1921, the defendant corporation was in possession under a verbal agreement which expired at that time, and, upon plaintiffs giving notice to the defendant that the rent would thereafter be $200 per month, and upon defendant's refusal to pay the rent or to quit the premises upon demand made nearly a year after the alleged notification of the increase in the rent, it immediately became subject to removal by the summary method of an action in unlawful detainer.

2, 3. The question of whether defendant was in possession when plaintiffs acquired title in January, 1921, under a verbal agreement which expired at that time was a controverted fact in the case found by the trial court against plaintiffs. It seems that counsel for plaintiffs, appreciating the result of this adverse finding, now insist that the oral agreement between Nenzel and the Rochester Mines Company, whereby it was agreed that said company should have the use of the water at a rental of $30 per month, payable monthly, referred to water from a spring different from that mentioned in the original contract of lease between Nenzel and the Nenzel Crown Point Mining Company. The court found

against this contention, and decided that said lease agreement created a tenancy at law for a specified term of five years from the date thereof with the privilege of renewal, if the lessee should so elect. In this situation plaintiffs as purchasers of the water right and water plant took subject to the terms and conditions of the prior lease, duly assigned to the defendant, and the oral agreement of Nenzel to furnish the water at a rental charge of $30 per month. It is well settled that a grantee of the reversion which is subject to a lease made by the grantor is bound to take notice of all the rights of a tenant in possession. Underhill on Landlord and Tenant, p. 496. Certainly plaintiffs by virtue of their junior conveyance did not have any larger rights against the defendant than Nenzel, their grantor and the defendant's lessor. To so hold would be to disregard a well-known and elementary principle of law. The trial court seems to have recognized this, but took the view that, since the water in question belonged to plaintiffs, it was their right to increase the rent to $200 per month, which the defendant had to pay or terminate the tenancy.

4, 5. This, I apprehend, was a misapplication of the law under which rent may be increased by the parties in the middle of a term. The plaintiffs, who took subject to all the rights of the defendant in possession under its prior lease, could not increase the rent for the unexpired portion of the term except by an agreement supported by a consideration good in law. Taylor v. Winters, 6 Phila. (Pa.) 126. We are not in accord with the suggestion that defendant's continued use of the water must be construed into an assent to the increase of the rent. There was no privity of contract, express or implied, between the parties to pay the increased rent. On the contrary, the defendant did not pay the same before or after the demand made upon it to pay the rent or to quit the premises, and plaintiffs ultimately charged the defendant with being guilty of an unlawful detainer under the statute for nonpayment of rent. Conceding, for the sake of the argument, that plaintiffs notified the defendant when they acquired title that the rent would

thereafter be $200 per month, the defendant not having assented to the increase, its remaining in possession did not make it liable therefor, because it had the legal right to continue to hold the property until the expiration of its term and could be liable only for the rent it had agreed to pay. Bancroft v. Seashore Camp Ground School, 120 Miss. 446, 82 South. 314. The case at bar is not one where notice has been given to a tenant whose term is expiring that in the event of his holding over the rent will be for an increased amount, and the tenant continues to hold over without objection to the increase.

In any view, the judgment for rent cannot be upheld upon the theory adopted by the trial court, which was that since the water in question belonged to plaintiffs it was their right to increase the rent, thus leaving the defendant with but the one option, to either pay the rent or terminate the tenancy.

6, 7. We are further of opinion that the court erred in deciding that plaintiffs were entitled to recover possession of the premises on the ground that there was no renewal of the contract of lease from Nenzel to the Nenzel Crown Point Mining Company. One of the officers of the defendant corporation seems to have deemed it necessary or expedient to give notice to Joseph F. Nenzel, the lessor, of the corporation's election to continue the term of the lease for another period of five years. We are in accord with the court's ruling that there was no evidence from which any legal presumption could be drawn that the letter notifying Joseph F. Nenzel of the corporation's election to continue the term was received by him in due course of mail, but it does not follow that the failure of the defendant to give formal notice of its election to extend the term entitled plaintiffs to recover.

There is a distinction between the "extension" of a lease and a "renewal" of a lease and between an "option of extension" and an "option of renewal" of a lease. 16 R. C. L. p. 885; Underhill, sec. 803; Crenshaw-Gary Lumber Co. v. Norton, L. R. A. 1916E, 1227, annotated.

The clause in the lease reads:

"Upon the termination of the term hereof said party of the second part shall have the right to an extension for a further period of five (5) years, if it shall so elect."

It is obvious that this covenant means no more than to prolong or continue the lease at the option of the lessee. The weight of authority is that, when there is an option to lessee to have the same term extended, no notice of an election to have the term continue is necessary, unless it is required by a clause in the lease. Jones on Landlord and Tenant, sec. 340; Taylor on Landlord and Tenant, sec. 332; Underhill on Landlord and Tenant, sec. 803, p. 1362.

Underhill, sec. 809, p. 1377, says:

"Where a lease conferring an option to renew upon the lessee omits to provide that he shall notify the lessor of his election to renew, a notice from him to his lessor of his intention to renew is not required. In such a case the lessee's merely remaining in possession after the term has expired is an exercise of the option to renew and binds both him and his lessor for a new term."

To test the matter by the question of evidence it is obvious that no legal right of plaintiffs is infringed by holding that no formal notice of election was necessary. While we do not go so far as to hold that plaintiffs had actual knowledge of the defendant's intention to continue the term, yet plaintiffs' demand upon defendant to pay the rent or to quit the premises affords demonstration that no notice of election was considered necessary by plaintiffs in order for the defendant to extend the term for another five years.

The court rested its judgment upon a mistake of law, both with respect to the matter of the increased rent and the defendant's right to an extension of the term of the lease. The judgment is therefore reversed, and the cause is remanded for a new trial.

COLEMAN, J.: I concur in the order.

DUCKER, C. J.: I dissent.

ON PETITION FOR REHEARING

February 9, 1925.

*Per Curiam:*

Rehearing denied.

DUCKER, J.: I dissent.