NEBRASKA TELEPHONE COMPANY v. STATE OF NE-
BRASKA, EX REL. JOHN O. YEISER.

55  627
60 . 241

FILED JUNE 23, 1898.   No. 9615.

1. **Mandamus:** OTHER REMEDY. A litigant will not be permitted to invoke the extraordinary remedy of mandamus when an express statute affords him an adequate remedy for the redress of the grievance of which he complains.

2. **Telephone Companies:** COMMON CARRIERS. A private corporation engaged in the business of operating a telephone plant is a common carrier of news and intelligence.

3. ————: ————: DUTIES: RATES. Such a public service corporation is charged with certain public duties, among which are to furnish for a reasonable compensation to any citizen a telephone and telephonic service, and to charge each patron for the service rendered the same price it charges every other patron for the same service under substantially the same or similar conditions.

4. ————: ————: ————: ————. The power—the jurisdiction—to determine what compensation a public service corporation may exact for services to be rendered by it is a legislative and not a judicial function.

5. **Jurisdiction of Courts.** The jurisdiction of the courts is limited to declaring what the law is, and they are forbidden by the constitution to perform legislative functions.

ERROR from the district court of Douglas county. Tried below before SCOTT, J. *Reversed.*

The opinion contains a statement of the case.

*Charles Offutt* and *W. W. Morsman,* for plaintiff in error:

The alternative writ contained no averment that the relator had applied to the board of transportation and exhausted the remedy there. The remedy by mandamus cannot be invoked where relator has another remedy. (*State v. Fremont, E. & M. V. R. Co.,* 22 Neb. 313; *State v. Fremont, E. & M. V. R. Co.,* 23 Neb. 117; *State v. Chicago, St. P. M. & O. R. Co.,* 19 Neb. 482; *State v. Republican Valley R. Co.,* 17 Neb. 647; *Northern P. R. Co. v. Washington Territory,* 142 U. S. 492.)

The relator has no clear, legal right to demand, nor is

the respondent under any duty, specially enjoined by law, that its rates be fixed at a sum which will produce no more than a "fair, reasonable, and just dividend" to its stockholders. (*State v. City of Omaha*, 14 Neb. 265; *State v. Nelson*, 21 Neb. 572; *State v. Cook*, 43 Neb. 318; *State v. Home Street R. Co.*, 43 Neb. 830; *State v. Merrell*, 43 Neb. 575; *Laflin v. State*, 49 Neb. 614; *Stone v. Farmers Loan & Trust Co.*, 116 U. S. 307; *Dow v. Beidelman*, 125 U. S. 680; *Chicago, M. & S. P. R. Co. v. Minnesota*, 134 U. S. 418; *Reagan v. Farmers Loan & Trust Co.*, 154 U. S. 395; *Chicago & G. T. R. Co. v. Wellman*, 143 U. S. 339; *Steenerson v. Great Northern R. Co.*, 72 N. W. Rep. [Minn.] 713; *Canada S. R. Co. v. International Bridge Co.*, 8 L. R. App. 723; *Northern P. R. Co. v. Washington Territory*, 142 U. S. 492; *People v. New York, L. E. & W. R. Co.*, 104 N. Y. 58.)

The alternative writ contained no averment of facts showing that the service sought to be coerced was a duty specially enjoined by law. The peremptory writ should not have been allowed. (*Baltimore & O. R. Co. v. Maryland*, 21 Wall. [U. S.] 456; *Chicago, B. & Q. R. Co. v. Iowa*, 94 U. S. 156; *Munn v. Illinois*, 94 U. S. 113; *Peik v. Chicago & N. W. R. Co.*, 94 U. S. 164; *Chicago, M. & S. P. R. Co. v. Ackley*, 94 U. S. 179; *Winona & S. P. R. Co. v. Blake*, 94 U. S. 181; *Stone v. Farmers Loan & Trust Co.*, 116 U. S. 307; *Dow v. Beidelman*, 125 U. S. 680; *Chicago, M. & S. P. R. Co. v. Minnesota*, 134 U. S. 418; *Chicago & G. T. R. Co. v. Wellman*, 143 U. S. 339; *Budd v. New York*, 143 U. S. 517; *State v. Chicago, M. & St. P. R. Co.*, 38 Minn. 298; *Foreman v. Commissioners*, 67 N. W. Rep. [Minn.] 207; *State v. Young*, 29 Minn. 474; *State v. Fremont, E. & M. V. R. Co.*, 22 Neb. 313; *State v. Fremont, E. & M. V. R. Co.*, 23 Neb. 117.)

The averments of discrimination are immaterial. (*Western Union Telegraph Co. v. Call Publishing Co.*, 44 Neb. 326.)

*John O. Yeiser, contra:*

Corporations or natural persons engaged as (1) com-

mon carriers, (2) as public monopolies, or (3) in a business
in which the public has an interest are subject to regula-
tion and control by the state. (*People v. Budd*, 117 N. Y.
19; *Dow v. Beidelman*, 125 U. S. 680; *Wabash, S. L. & P.
R. Co. v. Illinois*, 118 U. S. 568; *Budd v. New York*, 143
U. S. 537; *Chicago, B. & Q. R. Co. v. Minnesota*, 134 U. S.
455; *Gloucester Ferry Co. v. Pennsylvania*, 114 U. S. 217;
*Spring Valley Water Works v. Schottler*, 110 U. S. 347;
*Brass v. Stoeser*, 153 U. S. 403; *Chesapeake & Potomac Tele-
phone Co. v. Baltimore & Ohio Telegraph Co.*, 66 Md. 399;
*Frederick v. Goshon*, 30 Md. 446; *State v. Nebraska Tele-
phone Co.*, 17 Neb. 126; *Haugen v. Albina Light & Water Co.*,
21 Ore. 418; *Munn v. Illinois*, 94 U. S. 113.)

Telephone companies are subject to regulation by
reason of the fact of their being engaged in a business
partaking of all three of the elements or principles which
permit of the regulation of a business by the state.
(*Lough v. Outerbridge*, 143 N. Y. 271; *Stamford v. Pawlett*,
1 Cromp. & Jerv. [Eng.] 57; *Gard v. Callard*, 6 M. & S.
[Eng.] 69; *Chicago & A. R. Co. v. People*, 67 Ill. 11;
*State v. Nebraska Telephone Co.*, 17 Neb. 126; *Hockett v.
State*, 105 Ind. 258; *State v. Delaware & Atlantic Telegraph
& Telephone Co.*, 47 Fed. Rep. 637; *Ex parte State*, 52 Ala.
231; *St. Louis, A. & T. R. Co. v. Philadelphia Fire Ass'n*,
60 Ark. 325; *Ex parte Wall*, 48 Cal. 279; *Ewing v. Oroville
Mining Co.*, 56 Cal. 649; *Spinney v. Griffith*, 98 Cal. 149;
*Green v. Aker*, 11 Ind. 223; *McCollom v. Pipe*, 7 Kan. 122;
*St. Joseph Board of Public Schools v. Patten*, 62 Mo. 444;
*Jerman v. Benton*, 79 Mo. 148; *Fusz v. Spaunhorst*, 67 Mo.
256; *Price v. Smith*, 24 S. E. Rep. [Va.] 274; *Supervisors
v. Stout*, 9 W. Va. 703; *State v. Nebraska Telephone Co.*,
17 Neb. 126; *Hockett v. State*, 105 Ind. 257; *City of St.
Louis v. Bell Telephone Co.*, 96 Mo. 623; *Central Union Tele-
graph Co. v. Bradbury*, 106 Ind. 1; *Delaware & Atlantic
Telegraph & Telephone Co. v. State*, 50 Fed. Rep. 678;
*Central Union Telephone Co. v. State*, 118 Ind. 194; *People
v. Budd*, 117 N. Y. 22; *Gillis v. Western Union Telegraph*

Co., 61 Vt. 465; *Bell Telephone Co. v. Commonwealth,* 3 Atl. Rep. [Pa.] 825.)

Although such business is and has been usually regulated by the legislature, nevertheless, in the absence of legislation, it has been from time immemorial, and is now, the practice and custom to regulate such business by the judiciary. (*Chicago, M. & S. P. R. Co. v. Minnesota,* 134 U. S. 458; *Munn v. Illinois,* 94 U. S. 133; *State v. Republican V. R. Co.,* 17 Neb. 647; *Dow v. Beidelman,* 125 U. S. 687; *Lough v. Outerbridge,* 143 N. Y. 271; *Wheeler v. Northern Colorado Irrigation Co.,* 10 Colo. 582; *Attorney General v. Chicago & N. R. Co.,* 35 Wis. 588; *Stern v. Metropolitan Telephone & Telegraph Co.,* 46 N. Y. Supp. 110; *Menacho v. Ward,* 27 Fed. Rep. 533; *Stone v. Farmers Loan & Trust Co.,* 116 U. S. 331; *Augusta S. R. Co. v. Wrightsville & T. R. Co.,* 74 Fed. Rep. 527; *Camblos v. Philadelphia & R. R. Co.,* 4 Brewst. [Pa.] 563; *People v. Chicago & A. R. Co.,* 130 Ill. 181; 8 Am. & Eng. Ency. Law 916; *Ruggles v. Illinois,* 108 U. S. 526; *Chicago & A. R. Co. v. People,* 67 Ill. 11; *Shepard v. Milwaukee Gas Light Co.,* 6 Wis. 538; *Stamford v. Pawlett,* 1 Cromp. & Jerv. [Eng.] 81.)

A reasonable compensation was all that could be exacted by common carriers at common law. (*Wheeler v. Northern Colorado Irrigation Co.,* 10 Colo. 589; *Steenerson v. Great N. R. Co.,* 72 N. W. Rep. [Minn.] 713; *Killmer v. New York C. & H. R. R. Co.,* 100 N. Y. 395; *Chicago & A. R. Co. v. People,* 67 Ill. 11; *Lough v. Outerbridge,* 143 N. Y. 271; *Ruggles v. Illinois,* 108 U. S. 531; *Munn v. Illinois,* 94 U. S. 113; *Haughen v. Albina Light & Water Co.,* 21 Ore. 411.)

Relator has no other speedy and adequate remedy at law; but a new remedy being enacted without repealing the common law, the remedy is considered cumulative and a party may elect. (*State v. Tryon,* 39 Conn. 185; *Ex parte Frank,* 52 Cal. 610; *Ruggles v. Illinois,* 108 U. S. 526; *State v. Bethea,* 43 Neb. 451; *Gooch v. Stephenson,* 13 Me. 371; *Candee v. Hayward,* 37 N. Y. 653; *Crittenden v. Wilson,* 5 Cow. [N. Y.] 165.)

The alleged duty of a common carrier is one specially enjoined by law, and may be enforced by mandamus. (*State v. Nebraska Telephone Co.*, 17 Neb. 136; *State v. Republican V. R. Co.*, 17 Neb. 656; *State v. Joplin Water Works*, 52 Mo. App. 319; *Chesapeake & Potomac Telephone Co. v. Baltimore & Ohio Telegraph Co.*, 66 Md. 400; *Central Union Telephone Co. v. State*, 118 Ind. 194; *Chicago & N. W. R. Co. v. People*, 56 Ill. 367; *State v. Delaware & Atlantic Telegraph & Telephone Co.*, 47 Fed. Rep. 633; *Augusta S. R. Co. v. Wrightsville & T. R. Co.*, 74 Fed. Rep. 527; *People v. Chicago & A. R. Co.*, 130 Ill. 181; *Wheeler v. Northern Colorado Irrigation Co.*, 10 Colo. 582; *Haughen v. Albina Light & Water Co.*, 21 Ore. 423; *People v. New York C. & H. R. R. Co.*, 28 Hun [N. Y.] 543; *Stamford v. Pawlctt*, 1 Cromp. & Jerv. [Eng.] 81; *Swan v. Williams*, 2 Mich. 439; *Railroad Commissioners v. Portland & O. C. R. Co.*, 63 Me. 279.)

RAGAN, C.

The Nebraska Telephone Company is a corporation organized and existing under the laws of the state, having its principal office and place of business in the city of Omaha, and owns and operates a telephone plant in that city. John O. Yeiser is by profession a lawyer and a citizen of said city of Omaha. Yeiser desired a telephone placed in his law office for his own use and requested the telephone company to furnish him an instrument properly connected, and afford him telephonic service. The telephone company refused to comply with this request unless Yeiser would pay it for such instrument and service the sum of $5 per month in advance. Yeiser claimed that this sum was an unreasonable and exorbitant charge, refused to pay the same, but tendered the telephone company $9 as compensation for the service required of it for three months and demanded that it supply him with the telephone and telephonic service for that length of time. This demand was refused and Yeiser thereupon applied to the district court for, and

obtained, a peremptory writ of mandamus directed to the telephone company commanding it to furnish Yeiser the telephone and telephonic service required by him for three months for the sum of $9. The telephone company has brought this judgment here for review.

1. Section 1, article 8, chapter 72, Compiled Statutes, provides that all charges made for any service rendered or to be rendered by the common carriers of the state shall be reasonable and just, and every unjust and unreasonable charge for such service is prohibited and declared to be unlawful. By section 11 of said article and chapter certain state officers are constituted a board of transportation, and section 12 of said article and chapter defines the powers and duties of said board of transportation with reference to the common carriers of the state. Construing this statute this court held in *State v. Fremont, E. & M. V. R. Co.*, 22 Neb. 313, that the board of transportation had authority to determine what were just and reasonable charges for a service rendered or to be rendered by common carriers, and that said board of transportation was invested with jurisdiction to fix, prescribe, and determine the charges which a common carrier might demand and receive for a service rendered or to be rendered by it, subject only to the limitation that the rate or charge fixed by the board should be just and reasonable. The legislature of 1897 (Session Laws, ch. 56; Compiled Statutes, ch. 72, art. 8, sec. 24) conferred upon this board of transportation the same and all the powers over the telephone, telegraph, and express companies of the state that it had over common carriers or railroad corporations of the state. In other words, if the statutes just referred to are valid, and we have placed a correct construction upon them, the legislature has conferred upon this board of transportation not only jurisdiction to inquire into charges of extortion and unjust discrimination on the part of telephone companies, and to make suitable orders for the redress of such grievances upon the complaint of the person aggrieved, but has also in-

vested the board of transportation with authority to fix and determine to what compensation a telephone company shall be entitled for any service rendered or to be rendered by it, subject to the limitation that the scale of prices fixed which the telephone company may charge for services to be rendered by it shall not be unreasonable or unjust, either to the telephone company or to its patrons.

*State v. Chicago, St. P. & M. R. Co.*, 19 Neb. 476, was a mandamus proceeding instituted in this court to compel the respondent to build a depot, side tracks, switches, and cattle yards at a certain point on its road. But this court held that whether the railway company should be compelled to build a depot at the place requested was a question—in the first instance at least—for determination by the board of transportation; that the legislature by the statute just quoted had committed the determination of that question to that board; that because the board was a special tribunal created for the purpose of determining the question, its powers in that respect must be exhausted before the court would interfere by mandamus to compel the railroad company to build the depot. We think this case controls the one at bar. So far as the record before us discloses no application has ever been made by the relator to the board of transportation to have it determined whether the charge of $5 per month demanded by the telephone company for the use of a telephone and telephonic service is unreasonable and exorbitant, whether $3 per month for the use of a telephone and telephonic service is a reasonable charge, nor that the board has fixed a scale of reasonable charges which the telephone company may exact for a service performed or to be performed by it. It is a familiar principle that a litigant will not be permitted to invoke the extraordinary remedy of mandamus where an express statute affords him an adequate remedy for the redress of the grievance of which he complains, and this is the principle upon which the case just cited rests.

A statute of the state of Indiana required each railway company of the state to file with the auditor of the county where its principal office was situate a statement of the amount of its capital stock for the purposes of taxation. This statement was to be filed between the first of January and the first of June each year. Another statute provided that if a railway company of the state failed to file with such auditor such statement, then it should be the duty of the auditor himself to make the statement, or list for the purposes of taxation the amount of the capital stock of such railway company, determining the facts in the manner provided by statute. A railway company of the state neglected to file with the auditor of the county where its principal office was located, between the first of January and the first of June, a statement of the amount of its capital stock, and thereupon the auditor of state instituted a proceeding in mandamus to compel the railway company to make and file such statement with such county auditor. The district court awarded the mandamus as prayed. But the supreme court reversed the judgment of the district court, saying: "If it were not provided by statute that, upon failure of the railroad company to file such statement within the time required by law, the auditor of the county shall proceed to make the same, a mandamus would doubtless lie to compel the officers of the railroad to furnish the list after the time had expired; but the rule is well established that mandamus will not lie where the statute has expressly provided another adequate remedy." (*Louisville & N. A. R. Co. v. State*, 25 Ind. 181.) To the same effect are *State v. Board of Supervisors*, 29 Wis. 79, and *Marshall v. Sloan*, 35 Ia. 445.

2. The respondent in the case at bar is a private corporation. By permission of the city of Omaha it is occupying the streets and alleys of that municipality with its poles, wires, and other appliances used in the conduct of the business in which it is engaged. It is a common carrier of news and intelligence. It is a corporation

affected with a public use—a public service corporation
—and as such it has assumed and is charged with certain
public duties, among which are to furnish for a reasona-
ble compensation to any inhabitant of the city of Omaha
a telephone and telephonic service, and to charge each of
its patrons for the service rendered or to be rendered the
same price it charges every other patron for the same
service under substantially the same or similar conditions.
(*State v. Nebraska Telephone Co.,* 17 Neb. 126; *American
Water Works Co. v. State,* 46 Neb. 194; *Western Union Tele-
graph Co. v. Call Publishing Co.,* 44 Neb. 326.) But the judg-
ment under consideration determines not only that the tel-
ephone company shall render for the relator the service
required by him, but fixes and determines as well what
compensation the relator shall pay to the respondent for
such service. This judgment then, in effect, determines,
decides, and fixes the charges which the respondent may
lawfully exact for services to be rendered in future by
it to its patrons. Where a public service corporation has
performed a service and sues to recover therefor, in the
absence of an express contract for a specific compensa-
tion, the measure of its damages is a reasonable com-
pensation for the services performed, and whether the
compensation which it demands is reasonable is a judi-
cial question. Where the legislature has fixed the com-
pensation which a public service corporation may exact
for the performance of a service, then the reasonable-
ness of the compensation so fixed by the legislature—that
is, whether the limiting of the corporation to the compen-
sation fixed by the statute would result in a confiscation
of the corporation's property—is a judicial question.
(*Smyth v. Ames,* 18 Sup. Ct. Rep. 418.) But the power—
the jurisdiction—to determine what compensation a pub-
lic service corporation may exact for service to be ren-
dered by it we understand to be a legislative and not a
judicial function. In the case at bar the respondent had
not performed services and sued to recover the compensa-
tion. If it had, the relator might have defended upon

the ground that the compensation demanded was unreasonable and the court would have had jurisdiction to determine the question. The case at bar is not a suit by the relator for damages against the respondent for its neglect and refusal to render to him for a reasonable compensation the service he demanded. In the case at bar the relator did not pay the compensation alleged to be exorbitant, which the respondent demanded, and then sue to recover back the excess. Had he done so, it may be that the court would have had the power to determine whether the compensation actually demanded and received by the respondent was unreasonable. But here the court determines that the respondent shall perform for the relator a specific service for three months for a specific sum of money. This in effect was a determination by the court that $3 per month was a reasonable compensation for the service required to be rendered by the respondent and a fixing of the compensation for such service at that price for the future.

We think the history of the legislation of the entire country shows that the power to determine what compensation public service corporations may demand for their services is a legislative function and not a judicial one. If the courts may determine what compensation a telephone company may exact for a service to be rendered in the future, we know of no reason why the courts may not determine the freight and passenger rates which the railway corporations of the state may charge for the transportation of freight and passengers; and yet the framers of our constitution recognized that this power to fix the compensation of public service corporations was a legislative one, as by that instrument they expressly confer upon the legislature the power, from time to time, to pass laws establishing reasonable rates or charges for the transportation of passengers and freight. (Constitution, art. 11, sec. 4.) And it is evident that the legislature has acted upon the theory that this power to fix the compensation of public service corporations is

one vested in it by the constitution. This is evident from its creation of the board of transportation and the powers conferred upon that board; and as late as 1897 the legislature conferred authority upon the mayor and council of cities of the metropolitan class to fix and determine by ordinance what compensation telephone companies doing business within such cities might charge and exact for services rendered or to be rendered by them. (Compiled Statutes, ch. 12a, sec. 131.) Fixing the compensation which public service corporations may charge for services to be rendered by them is legislating. It is lawmaking. The power of the courts is limited to declaring what the law is, and they are precluded by the constitution from performing legislative functions; and though the courts of the land have from time to time declared laws fixing the compensation which public service corporations might charge for services to be rendered by them void because the compensation fixed by the law was unreasonable in that the enforcement of the statute would confiscate the corporation's property, and thereby deprive it of its property without due process of law, we know of no court which has ever claimed that it had authority to determine what compensation would be a reasonable one for a service to be performed by such corporation.

The relator must address himself for relief from the grievances of which he complains to the legislative power of the state—to the legislature itself, to the board of transportation, to the mayor and council of the city of Omaha. If the compensation now charged and exacted by the telephone companies of the state is exorbitant and unreasonable, we must presume that the board of transportation, the mayor and council of the city of Omaha, and the legislature of the state, one and all of them, will investigate the matter and prescribe a scale of reasonable charges. The judgment of the district court is reversed and the proceeding dismissed.

REVERSED AND DISMISSED.