(No. 5350. June 6, 1930.)

HENRY W. KIEFER, J. McGIBBON, W. S. SNYDER, WADE BROS., INC., a Corporation, ALVIN DENMAN, Receiver for the EAST IDAHO GAS COMPANY, a Corporation, W. A. ASHMENT, and W. H. WRIGHT & SONS COMPANY, a Corporation, Appellants, v. THE CITY OF IDAHO FALLS, a Municipal Corporation of the State of Idaho, BARZILLA W. CLARK, Mayor, and E. R. UNDERHILL, Clerk of Said City, Respondents.

[289 Pac. 81.]

Alvin Denman, for Appellants.

Kenneth S. MacKenzie and George W. Edgington, for Respondents.

A. H. Wilkie, *Amicus Curiae.*

GIVENS, C. J.—Appellants contest as discriminatory, unreasonable and inequitable the rates fixed by the city council for electricity supplied by the municipally owned hydroelectric light and power plant of the city of Idaho Falls. The trial court found that the rate for water heating and the discount allowed hospitals were discriminatory and the same therefore need not be further considered. The rates in dispute are for commercial lighting, commercial power and sign lighting, domestic lighting, domestic power, domestic combination, and irrigation power.

C. S., sec. 3971, as amended 1927 Sess. Laws, 262, requires rates of a municipal plant to be reasonable.

Respondents contend that the courts are without jurisdiction to pass upon the reasonableness. of rates charged by a municipally owned light plant, and that the rates charged are reasonable and not discriminatory, and cite in support of the first point, *Homestead Co. v. Des Moines Electric Co.*, 226 Fed. 49. This case was reversed in *Homestead Co. v. Des Moines Electric Co.*, 248 Fed. 439, 160 C. C. A. 449, on the point that this issue was not involved therein; furthermore, that case did not concern rates of a municipal plant but only the authority of a municipality to fix maximum and minimum rates for a privately owned utility. The circuit court of appeals indicated that the action of the city council could be tested in the courts.

Cases cited in the note to this case in 12 A. L. R. 404, strongly suggest that courts do have jurisdiction to pass on the reasonableness of rates charged by municipally owned utilities. Most of the cases referred to by respondents, and many others cited, with regard to this point, hold that

relief must first be sought from the regulatory body but that thereafter the courts may be appealed to.

An Ohio case referred to, *Butler v. Karb,* 96 Ohio St. 472, 117 N. E. 953, is based upon a statute (Ohio Gen. Codes, secs. 4311, 4313, 4314), which we do not have. (See C. S., sec. 3864, as amended 1921 Sess. Laws, chap. 25, p. 33.)

*Springfield Gas Co. v. Springfield,* 292 Ill. 236, 18 A. L. R. 929, 126 N. E. 739, 746, sustains appellants' position. (See, also, *Milligan v. Miles City,* 51 Mont. 374, 153 Pac. 276, L. R. A. 1916C, 395; 1 McQuillin on Municipal Corporations, 2d ed., secs. 390, 391; vol. 4, sec. 1887; 43 C. J. 421.) The rule is well stated in 7 Fletcher, Cyclopedia Corporations, sec. 4558, at p. 7887.

From these authorities and the expressions of this court in *Feil v. Coeur d'Alene,* 23 Ida. 32, 129 Pac. 643, 43 L. R. A., N. S., 1095, while such expressions therein are only *dicta,* since they merely forecast the situation in case of municipal ownership, we believe it clear that, since municipally owned utilities are not under the jurisdiction of the Public Utilities Commission (C. S., sec. 2371), actions may be instituted in the courts by any person interested and affected thereby to test the reasonableness of their rates. (*Robbins v. Bangor Co.,* 100 Me. 496, 62 Atl. 136, 1 L. R. A., N. S., 963; *Barnes Laundry v. Pittsburgh,* 266 Pa. St. 24, 109 Atl. 535; *Westerhoff v. Ephrata,* 283 Pa. St. 71, 128 Atl. 656.)

Respondents further contend that the appellants are not sufficiently affected by any discrimination or unreasonableness, if any exists, to be entitled to bring this action. Appellants Kiefer and Snyder were taxpayers in Idaho Falls and users of electricity for domestic lighting from the municipal plant. It was not shown whether the other appellants used electricity, or were taxpayers, or how they were affected by the rates. While the authorities are not in agreement on this point, the weight of authority and the better rule appears to be that unless a party is affected by a rate, either as a user or a taxpayer, he may not complain thereof. (*Milligan v. Miles City, supra; Homestead Co. v.*

*Des Moines Electric Co., supra; St. Paul Book Co. v. St. Paul Gaslight Co.,* 130 Minn. 71, Ann. Cas. 1916B, 286, 153 N. W. 262, L. R. A. 1918A, 384; *Brummitt v. Ogden Water Works,* 33 Utah, 289, 93 Pac. 828.)

█ Unless the rates complained of resulted in such discrimination as against the domestic lighting rate as to make it bear more than its just and reasonable share of the burden of maintaining, operating and continuing the city's power plant, or unless the rates complained of as a whole were insufficient to raise enough revenue to adequately continue, maintain and operate the plant without imposing a tax upon appellants and their property, conceding that the municipal power plant should be self-sustaining, the appellants are not entitled to question the rates. (*Butler v. Karb, supra; Dailey v. New Haven,* 60 Conn. 314, 22 Atl. 945, 14 L. R. A. 69; Pond on Public Utilities, 3d ed., sec. 16, p. 27.)

██ Rates fixed by a municipality for electricity furnished by its own plant are presumed to be reasonable and the burden is upon those attacking such rates to show that such rates are discriminatory or unreasonable. (*Newark Natural Gas & Fuel Co. v. Newark,* 92 Ohio St. 393, 11 N. E. 150; *Lake Forest Water Co. v. Lake Forest,* 249 Ill. 382, 94 N. E. 517; *Darnell v. Edwards,* 244 U. S. 564, 37 Sup. Ct. 701, 61 L. ed. 1317; *Idaho Power Co. v. Thompson,* 19 Fed. (2d) 547; 4 McQuillin, sec. 1888.)

█ Mere difference in the rates charged various classes of users is not sufficient to establish an unjustifiable discrimination. (*Live Oak Water Assn. v. Railroad Commission,* 192 Cal. 132, 219 Pac. 65; *Silkman v. Board of Commrs.,* 152 N. Y. 327, 46 N. E. 612, 37 L. R. A. 827; *Western Union Tel. Co. v. Call Pub. Co.,* 44 Neb. 326, 48 Am. St. 759, 62 N. W. 506, 27 L. R. A. 622; *State v. Central Vermont R. R. Co.,* 81 Vt. 463, 130 Am St. 1065, 71 Atl. 194; *Williams v. Maysville Co.,* 119 Ky. 33, 82 S. W. 995; *Graver v. Edison Co.,* 126 App. Div. 371, 110 N. Y. Supp. 603; *Boerth v. Detroit City Gas Co.,* 152 Mich. 654, 116 N. W. 628, 18 L. R. A., N. S., 1197; *Idaho Power*

*Co. v. Thompson,* 19 Fed. (2d) 547; Wyman on Public Service Corporations, sec. 1320; 22 Cal. Jur. 70.)

■ This court cannot substitute its judgment for the judgment of the city council as to what rates are reasonable or best promote the public interest unless some substantial right is adversely affected. (*Idaho Power Co. v. Thompson, supra; Detroit, etc., v. Michigan Railroad Commission,* 203 Fed. 864.)

■ While ordinarily a rate should be sufficient to pay its cost of production, there may be circumstances which would justify a less rate. (*Idaho Power Co. v. Thompson, supra.*)

Appellants' principal complaint about the rates is that there is too wide a margin between the charge for domestic lighting and domestic cooking and between commercial window lighting and sign lighting.

Appellants also allege that at times there has not been sufficient power to adequately light the streets; that the street lighting has been turned off in order to furnish service for cooking purposes; that the load factor is very poor in that during certain seasons of the year and certain times of the day a relatively small amount of power is being used, but that large equipment is necessary to supply the peak-load during certain times of the day and certain seasons of the year; also that power is being sold to users outside of the city limits which is in fact not excess power and under contracts not limited to five years. (C. S., sec. 3984.)

While there was testimony from some witnesses that so far as they knew, contracts were not limited to five years, no contracts exceeding that term were introduced in evidence. Excess power is defined in C. S., sec. 3984, and the record does not show that electricity furnished ultra-municipal consumers was not in fact excess power within the definition of the statute.

There was also testimony with regard to the difficulty of generating the maximum amount of power, which the plant was capable of producing, during certain months of

the year, due to ice conditions in the river. While there were conclusions by some of the witnesses to the effect that the rates were discriminatory or unreasonable, no careful or detailed study was submitted by any witnesses taking into consideration all of the elements necessary in determining what would be a proper rate.

It should be borne in mind that we are here concerned with a municipally owned plant, and, furthermore that we are not determining what constitutes a reasonable rate, but are merely ascertaining whether the rates established injured appellants as taxpayers or domestic light users.

C. S., sec. 3971, as amended 1927 Sess. Laws 262, provides what charges may be considered in fixing reasonable rates for municipally owned plants, all readily ascertainable.

If the gross income of the plant has been sufficient to cover operating expenses and at least the additional charges above referred to in C. S., sec. 3971, we do not see how the taxpayers have been injured. The evidence discloses that the gross income in 1926 was $127,187.45. Testimony concerning the operating expenses and the other charges was vague, inconclusive and incomplete. In 1926, the budget item for operating expenses was $39,650. This did not include an overhead item of approximately $7,000. Interest on the bonded indebtedness amounted to $1925. There was no testimony introduced concerning a reasonable sinking fund charge; nor did the testimony furnish any definite information with regard to plant depreciation.

Appellants introduced in evidence the schedule of rates of four large electric light and power public utilities, privately owned, located in the northwest, urging that comparison of the rates in question with the rates of these companies showed that the Idaho Falls plant rate structure was faulty. Comparative rates, if in essential particulars similar conditions are shown to exist and all other relevant facts are taken into consideration, might be of value, but the mere rates themselves, without such detailed explanation, would not be of even comparative value, and

therefore the showing in this particular was insufficient to establish discriminatory or unreasonable rates.

 Of course the courts may not fix a rate; they may only determine whether a rate already established is discriminatory or unreasonable. (*Wilcox v. Consolidated Gas Co.*, 212 U. S. 19, 29 Sup. Ct. 192, 53 L. ed. 382, 15 Ann. Cas. 1034, 48 L. R. A., N. S., 1134; *Spring Valley Water Works v. San Francisco*, 192 Fed. 137; *Western Union Tel. Co. v. Myatt*, 98 Fed. 335.)

 The criterion for determining what are just and reasonable rates has been well stated in a general way as follows:

"Each case must depend very largely upon its own special facts and every element and every circumstance which increases or depreciates the value of the property, or of the service rendered, should be given due consideration, and allowed that weight to which it is entitled. It is, after all, very much a question of sound and well-instructed judgment." (*Spring Valley Water Co. v. City and County of San Francisco*, 165 Fed. 667, at 680, citing cases.)

 No evidence that appeals to us as conclusive was introduced on the question of the cost of the current supplied to different classes of users. One of the plaintiffs' witnesses testified that no investigation of any value was ever made along this line. Mr. Wilcox, an expert witness for the plaintiffs, testified that the actual cost of producing a kilowatt in 1925 (excluding interest charges and depreciation) was a little less than one cent. The lowest charge for domestic power in the rate schedule is one and one-half cents per kilowatt. The lowest charge for commercial power and sign lighting is one cent. For small quantities of current the rates to these classes of users are as high as two and three cents a kilowatt. Hence it would seem that even in these classes the rate is approximately equal to the cost of production. There is therefore no basis for plaintiffs' contention that these classes of users are being benefited at the expense of those who use current for domestic lighting. (Pond on Public Utilities, secs. 275, 565.)

As said in *Western Union Tel. Co. v. Call Pub. Co.*, 181 U. S. 92, 21 Sup. Ct. 561, 564, 45 L. ed. 765:

"There is no cast-iron line of uniformity which prevents a charge from being above or below a particular sum, or requires that the service shall be exactly along the same lines. But that principle of equality does forbid any difference in charge which is not based upon difference in service, and, even when based upon difference of service, must have some reasonable relation to the amount of difference, and cannot be so great as to produce an unjust discrimination."

We conclude that the showing made does not establish that appellants have been injured either as taxpayers or consumers by the established rates. We do not approve the rates questioned, but merely hold that the record does not establish that the rates complained of are, as to appellants, discriminatory or unreasonable.

The judgment is affirmed. Costs awarded to respondents.

Budge, Lee and McNaughton, JJ., and Terrell, D. J., concur.