KAREN L. BARD, APPELLANT, V. COX CABLE OF OMAHA, INC., A NEBRASKA CORPORATION, AND CITY OF OMAHA, A MUNICIPAL CORPORATION, APPELLEES.

416 N.W.2d 4

Filed November 25, 1987.   No. 85-526.

J. Patrick Green, Martin A. Cannon, and Larry W. Myers, for appellant.

Frank F. Pospishil and Harvey B. Cooper of Abrahams, Kaslow & Cassman, and Brent N. Rushforth and James M. McElfish, Jr., of Dow, Lohnes & Albertson, for appellee Cox Cable.

Herbert M. Fitle, Omaha City Attorney, and Timothy M. Kenny, for appellee City of Omaha.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

Plaintiff-appellant, Karen L. Bard, seeks an adjudication under the Uniform Declaratory Judgments Act, Neb. Rev. Stat. §§ 25-21,149 et seq. (Reissue 1985), that the community antenna television service franchise granted by the defendant-appellee City of Omaha to the defendant-appellee Cox Cable of Omaha, Inc., a Nebraska corporation, is void or, in the alternative, that the rates set by the city and charged by Cox Cable are excessive, and for other relief. The district court, after sustaining the separate demurrers of the city and of Cox Cable, dismissed Bard's amended petition. The five errors which Bard assigns to the district court's order of dismissal merge to challenge the district court's determinations that (1) she lacks the capacity to sue, (2) the court lacks subject matter jurisdiction, and (3) she has failed to state a cause of action. We reverse and remand for further proceedings.

This is the third suit concerning the Omaha-Cox Cable franchise to find its way to this court, the other two being *Hall v. Cox Cable of Omaha, Inc.*, 212 Neb. 887, 327 N.W.2d 595 (1982), and *Green v. Cox Cable of Omaha, Inc.*, 212 Neb. 915, 327 N.W.2d 603 (1982). In this third suit Bard alleges that in March of 1980 Cox Cable and five other applicants, pursuant to invitation, submitted to the city their proposals for providing

community antenna television service to the city's residents. After holding public hearings, the city council adopted an ordinance granting a 15-year franchise to Cox Cable, pursuant to which the city's mayor signed a franchise agreement with Cox Cable in September of 1980.

In order to induce the city to award it the franchise, Cox Cable represented that it would include in its service a feature called "Interactive Data Exchange" (INDAX), which would allow users to bank, shop, check travel schedules, play games, and access various data sources. However, contrary to Cox Cable's statements and representations, INDAX did not then exist, Cox Cable knew it did not exist, and no such service presently operates anywhere. Each of the five city council members who voted for the franchise publicly stated that Cox Cable's representations regarding INDAX and the promise to deliver INDAX service were the factors which convinced him to vote in favor of awarding the franchise to Cox Cable. Even though Cox Cable's other services were not as high in quality as those proposed by the other companies, the promised INDAX service would have rendered Cox Cable's proposal superior in quality to the others and would have justified acceptance of the Cox Cable proposal, notwithstanding the fact its rates were in excess of those proposed by the other applicants.

The operative petition further alleges that (1) other than INDAX, the quality of services offered by the other applicants was equal to or better than that offered by Cox Cable; (2) the rates proposed by the other applicants were 5 to 20 percent lower than those charged by Cox Cable; (3) the services actually offered by Cox Cable are not as numerous, or as varied, as the services proposed by the other applicants; and (4) the rates approved by the city council under the franchise agreement are between 10 and 30 percent higher than rates charged by "other comparable CATV companies for comparable services in cities of comparable size elsewhere in the United States." The petition also asserts that Bard has subscribed to and paid for the services provided by Cox Cable since 1982. The petition concludes that the Cox Cable rates are excessive and unreasonable in violation of Neb. Rev. Stat. § 18-2201 (Reissue 1983), the due process clause of the 14th amendment to the U.S. Constitution, and

Neb. Const. art. I, §§ 1, 3, 16, 21, and 25.

Prior to filing this action, Bard, through her attorneys, on November 18, 1983, wrote the city a letter asking that public hearings be held to review Cox Cable's franchise and rates. The letter advised that if notice of such hearings was not received within 10 days, judicial relief would be sought. This letter referred to and incorporated a June 8, 1983, letter sent to the city by the same attorneys on behalf of another subscriber. That earlier letter also asked that the matter of Cox Cable's franchise and rates be put on the city council's agenda within 30 days. The city took no action in response to either letter.

Thus, Bard undertook to state two causes of action. The first seeks to void the franchise on the ground it was procured by fraud. The second seeks a judicial review of rates which are alleged to be arbitrary and unreasonable.

The city and Cox Cable each demurred pursuant to the provisions of Neb. Rev. Stat. § 25-806 (Reissue 1985), which provides that a defendant may demur to a petition when it appears from the face thereof that, among other things, (1) the plaintiff lacks legal capacity to sue, (2) the court lacks subject matter jurisdiction, or (3) the petition fails to state a cause of action. The five bases upon which each demurrer rests combine to assert the existence of each of the foregoing three statutory grounds, which parallel the findings made by the district court and correlate to the assignments of error presented by this appeal. Neither demurrer rests on the claim that several causes of action are improperly joined, also a statutory ground.

Because this case was decided by the district court on demurrers, we are required to accept as true all the facts pled, together with the proper and reasonable inferences of law and fact which may be drawn therefrom, but we do not accept as true the conclusions of the pleader. *Ambroz v. Cornhusker Square Ltd., post* p. 899, 416 N.W.2d 510 (1987); *Slusarski v. County of Platte, post* p. 889, 416 N.W.2d 213 (1987); *Knoell v. Huff,* 224 Neb. 90, 395 N.W.2d 749 (1986); *Midwest Messenger Assn. v. Spire,* 223 Neb. 748, 393 N.W.2d 438 (1986).

In connection with the first assignment of error, the finding that Bard lacks the capacity to sue, we concern ourselves first

with the prayer that the franchise be declared void.

The long-settled law of this jurisdiction is that, absent an illegal expenditure of public funds or an increase in the tax burden, the sole method of attacking the validity of a franchise is by quo warranto. Neb. Rev. Stat. §§ 25-21,121 et seq. (Reissue 1985); *Clark v. Interstate Independent Telephone Co.*, 72 Neb. 883, 101 N.W. 977 (1904). No facts are pled from which it can be concluded that there has been an illegal expenditure of public funds or that taxes are affected. Thus, Bard lacks the legal capacity to maintain this action for the purpose of challenging the validity of the franchise.

As a subscriber to the franchise services, Bard has a special interest in the rates she pays and would benefit by a reduction of those rates. Thus, she alleges a special injury peculiar to herself aside from and independent of that suffered by the nonsubscribing general public. See, *Reimer v. K N Energy, Inc.*, 223 Neb. 142, 388 N.W.2d 479 (1986); *Nebraska Sch. Dist. No. 148 v. Lincoln Airport Auth.*, 220 Neb. 504, 371 N.W.2d 258 (1985); *Hall v. Cox Cable of Omaha, Inc.*, 212 Neb. 887, 327 N.W.2d 595 (1982); *Green v. Cox Cable of Omaha, Inc.*, 212 Neb. 915, 327 N.W.2d 603 (1982).

We have also said that before one may resort to a judicial challenge of rates set by a municipality, he or she must first seek redress from the municipality. *Hall v. Cox Cable of Omaha, Inc., supra.* The rule is analogous to that employed in derivative actions by stockholders against private corporations. *Anderson v. Clemens Mobile Homes*, 214 Neb. 283, 333 N.W.2d 900 (1983); *Kowalski v. Nebraska-Iowa Packing Co.*, 160 Neb. 609, 71 N.W.2d 147 (1955). One might argue that the 10-day period specified in Bard's November 18, 1983, letter was unreasonably short, particularly in view of the circumstance that the period included two weekends and the Thanksgiving holiday. However, the fact the city made no response to a similar June 8, 1983, letter leads to the conclusion that the city would not have responded to Bard's letter no matter what time limit was set. Just as in a derivative action against a corporation a stockholder is excused from making a demand upon the corporation if such would be unavailing, *Anderson v. Clemens Mobile Homes, supra*, so, too, is one excused from making a

futile demand upon a municipality. *Mock v. City of Santa Rosa*, 126 Cal. 330, 58 P. 826 (1899). Under the circumstances the 10-day demand upon the city was adequate.

We therefore conclude that Bard has the capacity to maintain this action insofar as it seeks a review of the rates she pays.

Consequently, with respect to the matter of rates, we reach the second assignment, that the district court erred in finding it lacked subject matter jurisdiction.

Section 18-2201 provides:

> The furnishing of community antenna television service is hereby declared to be a business affected with such a public interest that it must be regulated locally. All municipalities in Nebraska are hereby authorized and empowered, by ordinance, to regulate, to prohibit, and to consent to the construction, installation, operation, and maintenance within their corporate limits of all persons or entities furnishing community antenna television service. All municipalities, acting through the mayor and council or board of trustees, shall have power to require every individual or entity offering such service, subject to reasonable rules and regulations, to furnish any person applying therefor along the lines of its wires, cables or other conduits, with television and radio service. The mayor and council or board of trustees shall have power to prescribe reasonable quality standards for such service and shall regulate rate increases so as to provide reasonable and compensatory rents or rates for such service including installation charges. In the regulation of rate increases the procedure provided in section 18-2206 shall be used in any franchise granted or renewed after May 23, 1979. Such person or entity furnishing community antenna television service shall be required to carry all broadcast signals as prescribed by franchise and permitted to be carried by Federal Communications Commission regulations during the full period of the broadcast day of its stations.

Prior to its amendment in 1979, the pertinent language of § 18-2201 (Reissue 1977) provided that the "mayor and council or board of trustees shall have power to . . . regulate and fix

reasonable and compensatory rents or rates . . . ." 1969 Neb. Laws, ch. 119, § 1, p. 536-37. Thus, we agree with the district court's conclusion that any statutory authority it might have to review rates is limited only to the matter of rate increases. Since the suit is addressed to the rates as initially set rather than to an increase thereof, Bard has not stated a cause of action under the provisions of § 18-2201 (Reissue 1983).

Bard further alleges, however, that Cox Cable's rates violate the due process clause of the 14th amendment to the U.S. Constitution and several provisions of the Nebraska Constitution, including the due process clause contained in article I, § 3, thereof. The constitutional argument she makes limits itself to those due process clauses, and we, therefore, likewise limit our analysis to due process concerns.

Because the setting of rates for a regulated industry is a legislative act, the courts of this state lack the power to set rates. See *Nebraska Telephone Co. v. State*, 55 Neb. 627, 76 N.W. 171 (1898). The courts do, however, have the power to review legislatively set rates to determine whether they are so arbitrary and unreasonable as to be confiscatory and thus unconstitutionally take property without due process of law. See, *Reimer v. K N Energy, Inc.*, 223 Neb. 142, 388 N.W.2d 479 (1986); *Hall v. Cox Cable of Omaha, Inc.*, 212 Neb. 887, 327 N.W.2d 595 (1982); *Myers v. Blair Tel. Co.*, 194 Neb. 55, 230 N.W.2d 190 (1975); *Nebraska Telephone Co. v. State, supra; Capitol Cable, Inc. v. City of Topeka*, 209 Kan. 152, 495 P.2d 885 (1972); *Holton Creamery Co. v. Brown*, 137 Kan. 418, 20 P.2d 503 (1933); *Kiefer v. City of Idaho Falls*, 49 Idaho 458, 289 P. 81 (1930).

Thus, in the absence of overriding federal law, the district court possesses subject matter jurisdiction to determine whether Cox Cable's rates are so arbitrary and unreasonable as to be confiscatory.

The question at this point therefore becomes whether there exists any overriding federal law which divests the state courts of subject matter jurisdiction. The Cable Communications Policy Act of 1984, 47 U.S.C. §§ 521 et seq. (1982 & Supp. II 1984), provides, at § 543(c) (Supp. II 1984):

In the case of any cable system for which a franchise has

been granted on or before the effective date of this subchapter [December 29, 1984], until the end of the 2-year period beginning on such effective date, the franchising authority may, to the extent provided in a franchise—

(1) regulate the rates for the provision of basic cable service, including multiple tiers of basic cable service;

(2) require the provision of any service tier provided without charge (disregarding any installation or rental charge for equipment necessary for receipt of such tier); or

(3) regulate rates for the initial installation or the rental of 1 set of the minimum equipment which is necessary for the subscriber's receipt of basic cable service.

The relevant regulations promulgated under the act, specifically 47 C.F.R. § 76.33 (1986), provide in part:

(a) A franchising authority may regulate the rates of a cable system granted a franchise after December 29, 1984, and any cable system after December 29, 1986, subject to the following conditions:

(1) Only basic cable service as defined in § 76.5(pp) may be regulated;

(2) Only cable systems that are not subject to effective competition may be rate regulated. . . .

(3) A cable system once determined to be subject to effective competition shall not be subject to regulation for one year after any change in market conditions which would cause it to be determined not to be subject to effective competition.

(4) A cable system may automatically pass through to the basic service rate without franchising authority approval cost increases that are readily identifiable and entirely attributable to the provision of basic service. Rate increases of this type may be taken in addition to the automatic 5% annual rate increase to which the cable system may be entitled under the Title VI of the Communications Act.

(b) For franchises granted on or before December 29, 1984, a franchising authority may, until December 29, 1986, to the extent provided in the franchise agreement:

(1) Regulate the rates for the provision of basic cable service;

(2) Require the provision of any tier of service without charge (disregarding any installation or rental charge for equipment necessary for receipt of such tier); and

(3) Regulate the rates for the initial installation or the rental of one set of the minimum equipment necessary to receive basic cable service.

(c) Any state or local law in existence on December 29, 1984, which limits or preempts regulation of rates for cable service by any franchising authority shall remain in effect until December 29, 1986, to the extent that it provides for such limitation or preemption.

(d) In establishing any rate for the provision of basic cable service by cable systems subject to paragraph (a) of this section, the franchising authority shall: (1) Give formal notice to the public; (2) provide an opportunity for interested parties to make their views known, at least through written submissions; and (3) make a formal statement (including summary explanation) when a decision on a rate matter is made.

(e) Any party may petition the Commission for relief of the provisions in this section in accordance with the provisions and procedures set forth in § 76.7 for petitions for special relief.

We conclude therefrom that the Cable Communications Policy Act of 1984 does not preclude state judicial review of the rates Cox Cable charged Bard from the date of filing of this action to December 29, 1986. What authority the city retains to regulate rates after that date, and thus for the courts of this state to review, cannot be determined at this stage of the proceedings.

Since Bard has the capacity to sue for the purposes of reviewing Cox Cable's rates, and the state district court, at the least, possesses subject matter jurisdiction to review the rates charged prior to December 29, 1986, we must address Bard's third and last assignment, that the district court erred in finding she failed to state a cause of action.

In making this determination we are guided by the principle

that pleadings in ordinary actions are to be liberally construed, and if with such a construction a petition states a cause of action, a demurrer is to be overruled. See, *Waite v. Samson Dev. Co.*, 217 Neb. 403, 348 N.W.2d 883 (1984); *Northport Irrigation District v. Farmers Irrigation District*, 125 Neb. 607, 251 N.W. 174 (1933).

The crucial allegations for the purpose of determining whether a cause of action has been stated are that Cox Cable promised to deliver services it does not and cannot deliver, and that its charges are as much as 30 percent higher than those otherwise available. These allegations support an inference that Cox Cable's subscribers are paying a rate which includes a charge for something that is not being delivered to them and that, to that extent, the rate is arbitrary and unreasonable such as to be confiscatory and therefore in violation of the due process clauses of the state and federal Constitutions. Thus, Bard has stated a cause of action for judicial review of the rate set by the city. Whether the evidence will prove her allegations is a different question, to be decided at another time.

For the reasons hereinabove stated, the district court's judgment of dismissal is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

KRIVOSHA, C.J., and GRANT, J., not participating.