FIRST NATIONAL BANK OF OMAHA, A NATIONAL BANKING CORPORATION, APPELLANT, V. STATE OF NEBRASKA, APPELLEE.

430 N.W.2d 893

Filed October 28, 1988.    No. 87-027.

Thomas J. Culhane, William E. Morrow, James B. Cavanagh, and Gary L. Hoffman, of Erickson & Sederstrom, P.C., for appellant.

Robert M. Spire, Attorney General, and Martel J. Bundy for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

COLWELL, D.J., Retired.

Plaintiff's appeal involves a claim made under the State Tort Claims Act, Neb. Rev. Stat. §§ 81-8,209 et seq. (Reissue 1987). Plaintiff, First National Bank of Omaha (FNB), claims damage when it acquired a bank and a savings company as suggested and approved by the State of Nebraska (State) acting by and through the director of the Department of Banking and Finance (Department). The two institutions later became insolvent. The State's demurrer to the petition was sustained, and the trial court ordered the petition dismissed without leave to amend.

On April 8, 1985, FNB filed a claim with the State Claims Board for $3,760,000 damages caused by acts or omissions of the State. This claim was denied by the board on October 7, 1985. On April 1, 1986, FNB filed its petition in the Lancaster County District Court.

The petition informs us as follows. In April 1980, FNB loaned funds to James and Nancy Gillette to acquire the stock of First Security Bank and Trust Company (Bank) and First Security Savings (Savings), an industrial loan and investment company, both of Beatrice, Nebraska. The loans were secured by stock in both institutions. In January 1983, both institutions were nearly insolvent and the loans were in default, primarily due to nonperforming loans made to Newt Copple, his associates, and related entities. As of April 8, 1983, those loans

to the Bank amounted to $1,181,661, and the loans to Savings amounted to $1,537,308.08. FNB notified the Department of its decision to proceed against its collateral and sell the stock at public sale. The Department, acting through its director, Paul Amen, and its assistant director, Barry Lake, initiated and/or engaged in a series of discussions with FNB. On March 25, 1983, FNB sent notices to potential purchasers of its intent to sell the stock.

On March 10, 1983, the Department received notice from the Federal Bureau of Investigation of a pending investigation of fraudulent loan transactions at the Bank, and it had information of similar fraudulent loan transactions involving Commonwealth Savings Company and S.E. Copple, its president. This information was not shared with FNB.

On April 1, 1983, the director convened a meeting in his office, attended by FNB, the Gillettes, the Nebraska Depository Institution Guarantee Corporation (NDIGC), and S.E. Copple. A plan was proposed by the director for FNB to acquire the Bank and Savings that included three elements:

(a) The Bank and The Savings Company . . . would each loan S. E. Copple sufficient funds to permit him to purchase the Newt Copple loans from their respective institutions (thereby, in effect, extending his personal credit to further support those loans to Newt Copple and other related entities).

(b) FNB would accept the stock of the Bank and the Savings Company and the other collateral in satisfaction of the loans to the Gillettes, Beatrice State Company and Olympic Investment Company, and, thereby, become the owner of both institutions.

(c) The NDIGC would make a capital contribution of $200,000.00 to the Savings Company and provide a guarantee in the amount of $680,000.00 against further losses by that institution.

On April 8, 1983, FNB entered into an agreement with the Gillettes to acquire the stock and assets of Bank and Savings upon these conditions: (1) The Bank and Savings have each made a loan to S.E. Copple acceptable to the Department; (2) the NDIGC and Savings have made an agreement providing for

capital advances and guarantees acceptable to the Department; and (3) the Department has provided assurances to FNB concerning the Bank's and Savings' capital adequacy, quality of assets, and violations of law. Barry Lake appeared as a witness to the execution of the agreement.

On April 8, 1983, the Department approved the FNB-Gillette agreement. No facts are alleged regarding the agreement. However, by inference, the suggested substitute loans were made by the Bank and Savings to S.E. Copple, and an agreement was made between Savings and NDIGC. There is a conclusion that the Department accepted the terms and conditions of the S.E. Copple loans, accepted the terms of the Savings-NDIGC agreement, and gave assurances to FNB concerning the capital adequacy, asset quality, and violations of law relating to the Bank and Savings. Soon, S.E. Copple defaulted on the notes to the Bank and Savings.

The concluding paragraph, paragraph 15, states six particular acts of negligence that FNB claims were the proximate cause of its damage. The State filed a motion to make parts of paragraph 15, alleging the acts of negligence, more definite and certain, and to strike parts thereof. The motion was granted. FNB realleged parts of paragraph 15 and amended other parts as ordered.

"The enumeration of specific acts of negligence should state the *ultimate acts of negligence* and not the conclusion of the pleader." (Emphasis supplied.) *Graham v. Simplex Motor Rebuilders, Inc.*, 189 Neb. 507, 512, 203 N.W.2d 494, 498 (1973); *Ripp v. Riesland*, 176 Neb. 233, 125 N.W.2d 699 (1964).

FNB has alleged six separate acts or omissions of negligence. These allegations are mixed with lengthy operative facts and conclusions, making the negligent acts difficult to distinguish. Since the general allegation of negligence will withstand the challenge of a demurrer, see *Crawford v. Ham*, 209 Neb. 802, 311 N.W.2d 896 (1981), it is sufficient that we briefly summarize the allegations as being that the State was negligent in: (1) suggesting, fostering, and approving the April 8, 1983, FNB-Gillette agreement; (2) failing, in the course of its operational performance of regulatory duties, to discover S.E. Copple's insolvent condition; (3) approving the S.E. Copple

transactions with the Bank and Savings; (4) failing to discover facts in the operational performance of its duties which would have prevented it from making assurances to FNB; (5) failing to timely advise FNB of the fraudulent and/or criminal conduct of S.E. Copple; and (6) failing to properly investigate the financial condition of S.E. Copple.

The State then demurred to the amended petition, claiming that there was a lack of jurisdiction and that the petition failed to state a cause of action. See Neb. Rev. Stat. § 25-806(1) and (6) (Reissue 1985). The demurrer was sustained "for the reasons set out in said demurrer," and the petition was dismissed for the reason that no cause of action can be stated. Neither party addresses the jurisdiction issue. FNB appeals, claiming the trial court erred in: (1) granting the motion to strike paragraphs 15(a), (c), (e), and (f); (2) sustaining the demurrer, because the amended petition stated a cause of action based on negligence under the State Tort Claims Act; and (3) dismissing FNB's petition, for the reason that it did state facts sufficient to state a cause of action for negligence under the State Tort Claims Act.

In view of the disposition of this case, it is not necessary to discuss the first assignment.

The second and third assignments are discussed together. A petition must contain a statement of facts constituting the cause of action, in ordinary and concise language and without repetition. See Neb. Rev. Stat. § 25-804 (Reissue 1985). "Proper pleading requires a petition to state in logical and legal form the facts which constitute the plaintiff's cause of action, define the issues to which the defendant must respond at trial, and inform the court of the real matter in dispute." *Rosnick v. Marks*, 218 Neb. 499, 501, 357 N.W.2d 186, 188 (1984). Ordinarily, a petition is liberally construed in favor of the pleader. See *Bard v. Cox Cable of Omaha, Inc.*, 226 Neb. 880, 416 N.W.2d 4 (1987). Statutes authorizing suits against the State are to be strictly construed in favor of the sovereign, since they are in derogation of the State's sovereignty. See *Frye v. Sibbitt*, 145 Neb. 600, 17 N.W.2d 617 (1945). "Tested by general demurrer a petition for an extraordinary remedy is strictly construed." *Emry v. Lake*, 181 Neb. 568, 570, 149 N.W.2d 520, 522 (1967).

A cause of action is judicial protection of one's recognized right or interest, when another, owing a corresponding duty not to invade or violate such right or interest, has caused a breach of that duty. *Ravenna Bank v. Custom Unlimited*, 223 Neb. 540, 391 N.W.2d 557 (1986). In order for actionable negligence to exist, there must be a legal duty on the part of the defendant to protect plaintiff from injury, failure to discharge that duty, and damages proximately resulting from that undischarged duty. *Tiede v. Loup Power Dist.*, 226 Neb. 295, 411 N.W.2d 312 (1987).

In *Maple v. City of Omaha*, 222 Neb. 293, 384 N.W.2d 254 (1986), a tort case brought under the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. §§ 23-2401 et seq. (Reissue 1983), this court held:

> Although we do not engage in a special-general duty analysis of sovereign immunity, it is still necessary for the claimant, in order to recover from the municipality, to prove that a duty was owed to him or her, that this duty was breached, and that an injury was proximately caused by that breach.

(Syllabus of the court.)

A general demurrer tests substantive legal rights of parties upon admitted facts, including proper and reasonable inferences of law and fact which may be drawn from facts which are well pleaded. *Dixon v. Reconciliation, Inc.*, 206 Neb. 45, 291 N.W.2d 230 (1980). As against a demurrer, the court must assume that the facts are as alleged, and cannot assume the existence of any facts not alleged, nor find facts in aid of the pleading, nor consider what evidence may be introduced at the trial. See *Fisher v. Housing Auth. of City of Omaha*, 214 Neb. 499, 334 N.W.2d 636 (1983). A demurrer reaches an instrument filed with and made a part of the petition. *Cagle, Inc. v. Sammons*, 198 Neb. 595, 254 N.W.2d 398 (1977).

## STATUTES

Section 81-8,210(4) provides:

> Tort claim shall mean any claim against the State of Nebraska for money only on account of damage to or loss of property or on account of personal injury or death, caused by the negligent or wrongful act or omission of any

employee of the state, *while acting within the scope of his office or employment, under circumstances where the state, if a private person, would be liable to the claimant for such damage, loss, injury, or death* . . . .

(Emphasis supplied.)

Section 81-8,219(1), in regard to claims exempt from the act, provides:

> (a) Any claim based upon an act or omission of an employee of the state, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform *a discretionary function or duty* on the part of a state agency or an employee of the state, whether or not the discretion be abused;
>
> . . . .
>
> (d) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, *misrepresentation*, deceit, or interference with contract rights.

(Emphasis supplied.)

Section 81-8,227 provides:

> (1) Every tort claim permitted under this act shall be forever barred unless within two years after such claim accrued the claim is made in writing to the State Claims Board in the manner provided by this act.

(Emphasis supplied.)

Applicable here are Neb. Rev. Stat. §§ 8-1501 to 8-1510 (Reissue 1987), regulating the acquisition or merger of financial institutions, including the powers, duties, and authority of the Department and its director, particularly as they relate to failing institutions.

## THE EXEMPTIONS

[T]he discretionary function or duty exemption in the State Tort Claims Act extends only to the basic policy decisions made in governmental activity, and not to ministerial activities implementing such policy decisions. [Citations omitted.] In other words, the State is liable for negligence of its employees at the operational level, where

there is no room for policy judgment. . . .

. . . .

. . . When one under no obligation to act does undertake action, one must act with reasonable care.
*Wickersham v. State*, 218 Neb. 175, 180-81, 354 N.W.2d 134, 138-39 (1984). See, also, *Koepf v. County of York*, 198 Neb. 67, 251 N.W.2d 866 (1977); *Allen v. County of Lancaster*, 218 Neb. 163, 352 N.W.2d 883 (1984).

Concerning misrepresentation, both parties argue that two federal cases should be considered: (1) *United States v. Neustadt*, 366 U.S. 696, 81 S. Ct. 1294, 6 L. Ed. 2d 614 (1961), and (2) *Block v. Neal*, 460 U.S. 289, 103 S. Ct. 1089, 75 L. Ed. 2d 67 (1983). Both cases involve the Federal Tort Claims Act.

The State relies on *Neustadt*, where it was held that misrepresentation under the act included willful or negligent misrepresentation, and an exemption applied where the purchaser of a home relied upon an inaccurate inspection and appraisal made by the Federal Housing Administration. The essence of an action for misrepresentation is the communication of misinformation on which the recipient relies.

FNB relies on *Block*, where the Court held that the claim did not arise out of misrepresentation as in *Neustadt* but, rather, upon the former conduct of officials of the Farmers Home Administration (FmHA) from whom the claimant, Neal, obtained a loan to purchase a house. Neal's contract with the builder provided that the work was to conform to plans and specifications approved by FmHA and that FmHA had the right to approve or reject work, materials, and workmanship. After construction and acceptance of the house, defects in workmanship appeared. Neal claimed relief under the Federal Tort Claims Act, resulting from FmHA employees' failure to inspect and to supervise construction. In approving the claim, the Court distinguished the facts from those in *Neustadt*:

[T]he essence of an action for misrepresentation, whether negligent or intentional, is the communication of misinformation on which the recipient relies. The gravamen of the action against the Government in *Neustadt* was that the plaintiff was misled by a "Statement

of FHA Appraisal" prepared by the Government. Neustadt alleged no injury that he would have suffered independently of his reliance on the erroneous appraisal. .

. . . .

. . . FmHA's duty to use due care to ensure that the builder adhere to previously approved plans and cure all defects before completing construction is distinct from any duty to use due care in communicating information to respondent.

460 U.S. at 296-97.

FNB argues that the State had a duty imposed by law to conduct periodic examinations of Commonwealth that would have revealed irregularities at that institution; that the State breached that duty by failing to conduct such examinations; and that "[b]ut for that omission, the Department would not or should not have approved Appellant's takeover of [the Bank and Savings]; nor would (or should) the Department have given Appellant assurances as to the capital adequacy of these institutions." Reply brief for appellant at 5.

The State Tort Claims Act excludes a cause of action based on a discretionary function or duty, § 81-8,219(1)(a), and any cause of action based on misrepresentation or deceit, § 81-8,219(1)(d). However, the act does recognize a cause of action based on the negligent breach of a duty, whether such is imposed by statute or common law. See *Wickersham v. State, supra.*

With the bare record of the petition before us, we note that the 30-page petition, incorporating exhibits and a copy of the original claim filed with the board, is confusing in our determination of the operative facts supporting FNB's theory of recovery, i.e., that the State breached its duty to examine Commonwealth periodically as provided by law. We find these operative facts and inferences: The State failed to conduct periodic examinations of Commonwealth as provided by law; the State failed to exercise reasonable care in the operational performance of its regulatory duties; and the State improperly approved FNB's acquisition of the Bank and Savings institutions. As against these allegations, there are other and

overriding allegations supporting the exemptions of discretion and misrepresentation. We agree with the trial court that the petition fails to clearly and concisely state facts alleging a cause of action in favor of FNB, and we affirm its order sustaining the demurrer.

Neb. Rev. Stat. § 25-854 (Reissue 1985) provides that if a demurrer is sustained, the adverse party may amend if the defect can be remedied by amendment. This is not an absolute right, and refusal by the trial court to permit an amendment of the petition must be shown to be an abuse of discretion. See *Suzuki v. Gateway Realty*, 207 Neb. 562, 299 N.W.2d 762 (1980). We are reminded that it is not the purpose of a demurrer to decide what the facts are, and, recognizing the distinction between fraud and tort, we find that it is reasonably possible that FNB may be able to state a cause of action in support of its theory of recovery. The court's order dismissing the petition without leave to amend was in error and an abuse of its discretion; that order is set aside. This cause is remanded for further proceedings. Upon receipt of the mandate by the clerk of the district court, FNB shall have 30 days to file an amended petition.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.